Debra Lynn TAYLOR *v.* STATE of Arkansas

CR 89-222                                                     799 S.W.2d 519

Supreme Court of Arkansas
Opinion delivered November 12, 1990

*Mark S. Cambiano, P.A.*, for appellant.

*Steve Clark*, Att'y Gen., *Kelly K. Hill*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant was charged as an accomplice to the premeditated murder of her husband, Roy Taylor. Henry Price also was charged with the murder, but he pleaded guilty and was sentenced to forty years imprisonment. At appellant's trial, Price testified and admitted to his and appellant's respective roles in the crime. Appellant was convicted and sentenced to life imprisonment. She raises seven points for reversal.

We first consider appellant's contention that the trial court erred in failing to suppress statements she made to investigating officers. Taylor's body was found at home on October 22, 1988, and appellant initially gave a statement to North Little Rock officers on that date. She gave another statement on October 27, the day of Taylor's funeral, and in that statement, gave general background information in an attempt to locate or eliminate suspects. On this date, and after her statement, the police placed her under surveillance. At this stage of their investigation, the officers believed she had been engaged in an extramarital affair, and it was during this surveillance that they observed her spending several nights in motels with Price. During this same period, the officers were investigating a boyfriend of a woman whom Taylor had been seeing prior to his death.

Appellant again met with the North Little Rock police on November 4 for another investigative interview which focused on any drug contacts or extramarital relations Taylor might have had that could possibly be connected with his death. In this same interview, the officers first became aware that appellant was being untruthful with them because while appellant denied having had any affairs with anyone, they had just confirmed that she was

intimately involved with Price.

Finally, on November 9, the police took Price in for questioning, and upon learning of this, appellant called the police to inquire about this latest event. Appellant was asked to come to the station, and she did, whereupon she was notified that she was a suspect in her husband's killing. The officers then told her some of the evidence that implicated her in the murder, and afterwards, they read her her *Miranda* rights. Following this procedure, appellant gave a statement, which reflected her involvement in the murder.

Recently, we reiterated the settled rule that the safeguards prescribed under *Miranda* v. *Arizona*, 384 U.S. 341 (1976), become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with a formal arrest. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). We further stated as follows:

> *[N]o Miranda warnings are required if the questioning by officers is simply investigatory* and that an officer's unarticulated intent has no bearing on the question of whether a suspect is in custody; rather, on that issue, *the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.* (Emphasis supplied.)

Id., 296 Ark. at 58, 754 S.W.2d at 526.

According to the testimony at the suppression hearing, appellant voluntarily appeared at the police station on each of the aforementioned occasions, and, except for her last visit, her freedom was never curtailed, and she was free to leave at all times. The record reflects that the police officers initially did not suspect the appellant of any complicity in her husband's murder and only became aware that she had been untruthful with them when on November 4 she denied any involvement with Price. After that date, the officers focused their investigation on Price and appellant, and when she appeared at the police station on November 9, the officers prevented her from making any statements concerning her involvement in the murder until she had been informed of and had waived her rights.

We conclude the evidence clearly supports the trial court's

ruling that the officers' investigation had not reached the accusatory state towards appellant until after November 4. Further, appellant's interviews did not become custodial in nature until November 9, at which time she was properly advised of and waived her rights before giving the statements that implicated her in the murder.

Before leaving this suppression issue, we note appellant's argument that she had asserted her right to counsel on October 25, and that, under the principles set out in *Shea* v. *Louisiana*, 470 U.S. 51 (1985), and *Edwards* v. *Arizona*, 451 U.S. 477 (1980), the officers were obliged to stop further interrogation of her until her counsel was present or unless she initiated further communication with the police.

■ As pointed out above, the appellant was not a suspect on October 25, the date when she initially appeared at the police station with a friend, who also was an attorney. Appellant's purpose for appearing on this date was to obtain some items that had been confiscated by police as part of the investigation. She did not give a statement on this visit. The attorney testified that at the time he and appellant went to the station, no one suspected the appellant of murder, and he made it clear to the police that he in no way legally represented the appellant. After their initial trip to the police station, the attorney said the appellant called him later, and in this conversation, he advised her to obtain counsel if the officers should read her her rights. Again, the record simply fails to support her claim that she had asserted her right to counsel. Indeed, the proof clearly supports the view that she knew her attorney friend did not represent her in this matter, and that, at all relevant times, she voluntarily chose to meet with the officers who were conducting an ongoing investigation of Taylor's murder. That being so, appellant's reliance on *Shea* and *Edwards* is misplaced. The trial court was correct in allowing her statements into evidence.

Appellant next contends that her conviction cannot be based solely upon Price's (her accomplice's) testimony unless corroborated by other evidence which connects her with the commission of her husband's murder. *See Carr* v. *State*, 300 Ark. 158, 777 S.W.2d 846 (1989); Ark. Code Ann. § 16-89-111 (1987). She also argues the broader issue that the evidence was insufficient to

support her conviction. We disagree with both contentions.

First, having determined appellant's statements admissible, we conclude that an abundance of evidence exists to corroborate Price's testimony implicating appellant in the crime. For example, she admitted in her statement to the police and in her testimony at trial that, approximately two and one-half months prior to Taylor's murder, she and Price had discussed killing her husband. She also admitted they discussed having someone perform the murder or that they might cause his death to appear as a result of a hunting accident or a robbery at his office. During this planning stage, appellant obtained an increase of $300,000 in her husband's life insurance. In reaching their final plans, she conceded that she and Price agreed that Taylor must be shot, but that appellant must be elsewhere when the murder occurred. Appellant stated further that she and Price discussed these plans during the week Taylor was killed. On October 21, she went to her brother's home in Texarkana and called Price that night. She admitted that, in her conversation with Price, he told her Taylor "might not be there" when she got back, and she took this to mean Taylor would be dead. According to Price, appellant was to call back the next morning to find out whether Price had actually killed Taylor and appellant's statement and phone records corroborate Price's assertion.

Price's other testimony is generally consistent with the foregoing evidence connecting the appellant with Taylor's murder. He related that he and appellant developed a code by which appellant would call Price on the morning of October 22, and he would tell her to shop for a black dress, indicating Taylor had been killed. While appellant denied such a code, appellant admitted to having called Price on the morning of October 22 and claims he said, "[H]e could not do it (kill Taylor)." Such an admission, while specifically denying knowledge of a code, certainly leads to the inference that she had called Price to find out if he had killed Taylor. Considerable proof was offered reflecting appellant's intimate relationship with Price, their shared concern over Taylor's abusive nature towards the appellant and their repeated discussions concerning plans to murder Taylor. At the end of the officers' investigation of Taylor's murder, appellant conceded to one officer that "she knew that she would be caught." Other evidence exists that further reflects

appellant's complicity in Taylor's murder, but we believe the foregoing sufficiently supports her involvement and connection with the crime.

Appellant also urges the trial court erred in failing to give jury instructions on the lesser included offenses of manslaughter or negligent homicide. She cites Ark. Code Ann. § 5-2-406 (1987), which provides that when two or more persons are criminally liable for an offense of which there are different degrees, each person should be liable only for the degree of the offense that is consistent with his own mental culpability. In using § 5-2-406 as her basis, appellant claims that she had nothing to do with planning Taylor's murder, but because of Price's love for her, their inability to be together and her telling Price how Taylor had abused her, she may have, by her negligent conduct, misled Price into committing the homicide. In other words, she submits that the intentional or premeditated state of mind of Price, the principal, in committing the murder should not automatically be assigned to her as an accomplice, since she never actually intended for Price to kill Taylor. She explains that Price's and her discussions regarding the various ways to murder Taylor were only fantasies.

The trial court indicated that Price's intent was controlling when selecting instructions in the appellant's case, but regardless of whose intent controlled, appellant's or Price's, the court stated, and justifiably we believe, that it was unconvinced that an instruction on manslaughter or negligent homicide applied to the conduct of either Price or the appellant. Where the evidence shows the guilt of the defendant as to the greater offense, it is not error to refuse instructions on the lesser included offenses. *Caton* v. *State*, 252 Ark. 420, 479 S.W.2d 537 (1972). In any event, the court's instructions given here on first and second degree murder focused on appellant's intent, not Price's, and the jury was not deprived of its ability to determine appellant's intent with respect to Taylor's murder.

In addition, we point out that the jury convicted appellant on the greater offense of first degree murder even though the lesser included offense of second degree murder had been given. Under these circumstances, we have held that any error resulting from the failure to give lesser included offenses is

cured. *See Branscomb* v. *State*, 299 Ark. 482, 774 S.W.2d 426 (1989).

■ Appellant's next point for reversal concerns the trial court's admission into evidence of a photograph depicting Taylor with his children. She claims the picture was irrelevant, but if relevant, its probative value was substantially outweighed by its prejudicial value. We disagree. Here, appellant injected into the trial the issue of Taylor's abusive and cold nature towards her and the children. We cannot say the trial court abused its discretion when allowing the photograph for whatever limited purpose it might have shed on Taylor's relationship with his children. *See Gardner*, 296 Ark. at 59, 754 S.W.2d at 527.

■ Appellant raises another argument that she seems to concede has little or no merit, *viz.*, she is constitutionally entitled to an indictment by grand jury. It is well settled that states are not required to charge by indictment but may charge by information. *Hurtado* v. *California*, 110 U.S. 516 (1884). This court has addressed this issue on a number of occasions and has consistently refused to extend the right to grand jury indictment to proceedings in this state. *Hamm* v. *State*, 296 Ark. 385, 757 S.W.2d 932 (1988).

Appellant also claims error resulted from the trial court's failure to grant a mistrial because of a bomb threat that occurred in the courthouse on the first day of her trial. Actually, the threat proved to be unrelated to appellant's case, and the trial judge so informed the jurors. Apparently, a news account in the next day's newspaper erroneously related the threat with the appellant's case. However, to guard against such accounts and possible prejudice, the court had previously admonished the jurors not to discuss the case, nor read, watch or listen to any media account of it.

■ After the news article and on the second day of trial, the judge expressly questioned the jurors to insure no prejudice resulted from the bomb threat or any account of it. We have held that a mistrial is an extreme remedy that should only be granted when justice cannot be served by continuing the trial. *Richmond* v. *State*, 302 Ark. 498, 791 S.W.2d 691 (1990). Here, the appellant failed to demonstrate, and we fail to see, how the threat prejudiced her case. To the contrary, we believe the precautions

taken by the judge assured no prejudice infected the trial.

Finally, while this case was pending on appeal, appellant filed a petition for writ of error coram nobis, claiming she is entitled to a new trial because Price, by letter, has recanted part of his trial testimony that implicated appellant in the murder. At trial, Price testified that he got a gun from his brother-in-law. He apparently used the gun to shoot Taylor. After he shot Taylor, he said that he hid the gun in the attic of the Taylors' house. He further testified that he later showed appellant where the gun was, and she retrieved it for him. He subsequently threw it into the Arkansas River.

In a letter written by Price after the trial, Price indicated his testimony connecting appellant with Taylor's death was either misleading or false, stating specifically that appellant "never gave Price any gun." Price's subsequent denial that appellant had anything to do with the murder weapon clearly does not dispell appellant's participation in her husband's murder, especially in view of all the evidence we reviewed above that connected her with the crime. Her statement with Price's and the other physical evidence meshed remarkably to show her connection and involvement in the murder.

As we held in *Penn* v. *State*, 282 Ark. 571, 670 S.W.2d 426 (1984), a writ of error coram nobis is a rare remedy, more known for its denial than its approval. The writ is granted only when there is an error of fact extrinsic to the record such as insanity at the time of trial, a coerced plea of guilty, or material evidence withheld by the prosecutor. *Id.* It must be a fact which might have resulted in a different verdict. *Id.* The situation in the present case simply fails to fit within the remedy sought. *See also Smith* v. *State*, 301 Ark. 374, 784 S.W.2d 595 (1990). Accordingly, we deny appellant's petition.

Pursuant to Sup. Ct. R. 11(f), we have reviewed the record and all objections ruled adversely to the appellant and find no prejudicial error. For the reasons given above, we affirm the trial court on all points, and in addition, deny appellant's request for a writ of error coram nobis.