FILED

September 21, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE )
)
Appellant )
)
)
v. )
)
)
WILLIE WILLIAMS, JR. )
)
Appellee. )

**FOR PUBLICATION**

**Filed:** September 21, 1998

HAMILTON COUNTY

HON. STEPHEN M. BEVIL,
  JUDGE

NO. 03-S-01-9706-CR-00060

For Appellee:

ALAN R. BEARD
Chattanooga, TN

For Appellant:

JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL E. MOORE
Solicitor General

MICHAEL W. CATALANO
Associate Solicitor General
Nashville, TN

WILLIAM H. COX, III
District Attorney General

THOMAS J. EVANS
Assistant District Attorney
General
Chattanooga, TN

**O P I N I O N**

COURT OF CRIMINAL APPEALS REVERSED;
JUDGMENT OF TRIAL COURT REINSTATED.                    DROWOTA, J.

The defendant, Willie Williams, Jr., was convicted of first degree premeditated murder.[1] In the Court of Criminal Appeals, Williams challenged his conviction, arguing that prejudicial error resulted when the trial court refused to instruct the jury with respect to the offense of voluntary manslaughter. A majority of the Court of Criminal Appeals Panel reversed his conviction and remanded the case for a new trial, finding that the trial court should have given an instruction on voluntary manslaughter under the proof presented at trial, that the failure to give the instruction deprived the defendant of his right to a trial by jury, an error which is not subject to harmless error analysis. Judge Jerry Smith dissented. He agreed that there was sufficient evidence in the record to trigger the need for an instruction on voluntary manslaughter and that failure to do so was error. He reasoned, however, that the error was harmless because it was apparent from the jury's verdict of guilt on the greater offense of first degree murder and its disinclination to consider the lesser included offense of second degree murder that it certainly would not have returned a verdict on voluntary manslaughter.

Thereafter, we granted the State permission to appeal primarily to determine whether the trial court's erroneous failure to instruct the jury as to the offense of voluntary manslaughter is subject to harmless error analysis. Upon careful consideration, we have determined that the trial court's failure to instruct the jury as to voluntary manslaughter is harmless error because the jury was instructed as to the lesser included offense of second degree murder but convicted the defendant of the greatest charged offense, first degree premeditated murder. We have also determined that the trial court did not erroneously

_____

[1]The defendant was also convicted of unlawful possession of a machine gun, but that conviction is not relevant to the issues in this appeal.

-2-

permit the jury to consider inadmissible hearsay testimony. Accordingly, we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court.[2]

## BACKGROUND

At approximately 4:40 a.m. on July 24, 1993, Delaney Thomas' automobile was found in an alley adjoining his mother's home. Thomas was inside the car dead from a gunshot wound to his head. The car's engine was still running.

Prior to discovering the victim's body, the Chattanooga Police Department had received two Emergency 911 calls involving Thomas and the defendant. At 3:37 a.m. an Emergency 911 dispatcher received a call from Thomas reporting that he had "a conflict" with the defendant, and that Williams had shot at his car "for no reason." Deanna Taylor, a Chattanooga patrol officer, was the first to respond to the dispatch to the defendant's residence. Officer Taylor said Williams seemed surprised to see her and nervous when she asked him if he had reported some property damage from a shooting incident. Nevertheless, Williams told Officer Taylor that Thomas had driven by his house shooting a gun and that he had returned fire. After interviewing Williams, Officer Taylor alerted other officers to be on the lookout for Thomas.

Approximately one hour later, at 4:37 a.m., the Emergency 911 dispatcher received a call from the defendant. Williams told the dispatcher "I believe I shot somebody. I followed him and he laying in the car.... Get the police out here right now. The man might be dying, he might be dead. I don't know. He around the corner from me. He in a Cadillac . . . I got the gun in the house now . . . ."

---

[2]Oral arguments were heard in this case in Johnson City as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Cherilyn Bryant, also a Chattanooga patrol officer, was the first officer to arrive at the defendant's residence in response to this call. She was escorted by the defendant and his brother to an alleyway a short distance from Williams' house. Though not visible from the road, when Officer Bryant entered the alleyway, she observed a Cadillac automobile parked in the alleyway. The engine of the car was running, and when she approached the car, Officer Bryant observed Thomas in the driver's seat of his car. He had sustained a gunshot wound to the head, and appeared to be dead. Blood on Thomas' body was dry and caked, indicating that some time had passed since the gunshot wound had been inflicted. No weapons were found in the victim's car. Officer Bryant, the defendant and his brother returned to Williams home. The defendant's brother went into the Williams' house, retrieved a Norinco AK-47 semi-automatic rifle, and turned it over to Officer Bryant. Fourteen shells of bullets from the rifle were found in Thomas' car and on the street nearby.

After waiving his right to counsel, the defendant gave officers a statement at the scene, relating that Thomas had shot at his house in a "drive-by" fashion earlier in the evening, and that he had reported the incident to the police. Thereafter, Williams had driven to a nearby intersection, where he encountered Thomas. He fired his weapon into the air to frighten Thomas. Then, he saw Thomas point a handgun through the passenger window at him, so he fired his gun in Thomas' direction. When he realized that the bullet had struck Thomas, he returned home and called the police.

Williams testified in his own behalf at trial stating that after he left work at midnight, he went to a bar called "The Shack" and remained there until it closed at about 2:30 a.m. He then went directly home. As he was backing into his driveway, a car he recognized as belonging to Thomas drove by, and the driver fired shots in his direction. He ran inside the house and told his wife and children to go to the back of the house where they would be

safer. He took his gun, the AK-47, inserted a clip, and left the house to go to his grandmother's home. Williams said he thought Thomas would not cause trouble at his house if his car was not there. Williams said that when he came upon Thomas by chance during the drive to his grandmother's home, he panicked and fired his gun several times at the ground in an attempt to scare Thomas. When Thomas drove into an alleyway, the defendant assumed he had succeeded in scaring Thomas away, so he returned to his residence.

The defendant further testified at trial that after he returned home, Officer Taylor arrived. In response to her inquiries, the defendant told her that Thomas had driven by and shot at the house. At trial, he denied telling her that he returned fire. After Officer Taylor left, Williams called his brother and asked him to look for Thomas and talk to him. The defendant's brother found Thomas sitting in his car. He returned, telling the defendant that Thomas had been shot. At that point, the defendant made the 4:37 a.m. call to 911. The defendant denied wanting to kill the victim; he stated that he was extremely upset over his death.

The Hamilton County medical examiner testified that Thomas had not been facing his killer when he had been shot. He also stated that had Thomas been holding a gun, the gun would have been found either in his hand or nearby in his automobile. The medical examiner also testified that the gunshot wound would have caused immediate death within seconds to a minute at the longest and that Thomas would have been incapable of any voluntary activity after sustaining the gunshot wound, such as disposing of a weapon or driving an automobile.

One of the defendant's neighbors testified that she heard shots, and then saw a man drive up in a small car, exit the car, approach the alley, return to his car and leave. Soon afterward, she saw two men walk down the street, reach behind a wall, retrieve a gun while furtively looking around, and walk away from the area.

Gloria Buchanan, the woman with whom Thomas had been living at the time of his death also testified at trial. Buchanan stated that on the night of the murder she had seen the defendant and his brother at a bar called "The Shack." The defendant's brother approached her and asked about the victim's whereabouts, but she did not tell him anything. The defendant had been standing nearby when this conversation occurred. Buchanan also testified that Thomas was the father of a child borne by the defendant's sister, Valencia Williams. Buchanan's daughter, Glorissa Buchanan, had been in a knife fight with Valencia. As a result of that fight, Glorissa had been sent to a juvenile detention facility after having been found delinquent at a juvenile hearing which occurred the week before Thomas was murdered. At that hearing, Thomas had testified that after Glorissa had stabbed his sister, the defendant had twice hit Glorissa with his rifle.

Based on the evidence as summarized above, the trial court instructed the jury on the offenses of premeditated first degree murder, second degree murder, and reckless homicide. The court rejected the defendant's request for an instruction on voluntary manslaughter. The jury convicted the defendant of first degree murder and imposed a sentence of imprisonment for life.

On appeal, a majority of the Court of Criminal Appeals' Panel reversed his conviction and remanded the case for a new trial because the trial court refused to instruct the jury as to the offense of voluntary manslaughter. Thereafter, we granted the State permission to

appeal, and for the reasons that follow, now reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court.

## HARMLESS ERROR ANALYSIS

In this appeal, the State concedes that the proof introduced at trial was legally sufficient to warrant an instruction upon voluntary manslaughter, and that the trial court erred in refusing to charge voluntary manslaughter to the jury . However, the State argues that the error was harmless beyond a reasonable doubt because the jury convicted the defendant of the greatest offense charged even though it was given instructions on the lesser included offenses of second degree murder and reckless homicide. In contrast, the defendant argues that the failure to charge voluntary manslaughter in this case was a constitutional violation not subject to a harmless error analysis because the charge was supported by the evidence presented at trial. We disagree.

As a preliminary matter, we deem it necessary to place the issue in appropriate historical context. Prior to 1967, the federal courts did not apply harmless error analysis to federal constitutional violations. Consequently, when a federal constitutional error occurred in a trial, reversal was the automatic remedy. State v. Nichols, 877 S.W.2d 722, 741 (Tenn. 1994); James C. Scoville, Comment, Deadly Mistakes: Harmless Error in Capital Sentencing, 54 U. Chi. L. Rev. 740, 741-42 (1987). Tennessee courts applied the same rule of automatic reversal to state constitutional errors as well. Nichols, 877 S.W.2d at 741; Dykes v. State, 201 Tenn. 65, 68-69, 296 S.W.2d 861, 862 (1956).

Harmless error analysis was approved for the first time in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), in which the United States Supreme

Court upheld the application of a harmless error analysis to federal constitutional errors in state criminal trials, concluding that such an error is harmless if the reviewing court is persuaded beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. While the Chapman Court acknowledged that there are some constitutional rights so basic to a fair trial that their violation can never be treated as harmless,[3] the United States Supreme Court since has indicated that application of harmless error analysis is generally the rule, not the exception. Rose v. Clark, 478 U.S. 570, 579, 106 S.Ct. 3101, 3106-07, 92 L.Ed.2d 460 (1986). Therefore, assuming that instruction on lesser offenses is a constitutional requirement under some circumstances,[4] no rule of automatic reversal is required. To the contrary, in modern jurisprudence, there is a presumption that harmless error analysis should be applied. Id.

Moreover, though sometimes described as a constitutional right, in this State the right to instructions on lesser offenses actually derives from a statute, Tenn. Code Ann. § 40-18-110(a)(1997 Repl.).[5] That statute was enacted in 1877. Chapter 85, Section 1, Acts of 1877. In Good v. State, 69 Tenn. 293 (1878), a decision rendered one year after passage of the statute, this Court held that a trial court's erroneous failure to charge on a lesser

---

[3]Chapman, 386 U.S. at 23, 87 S.Ct. at 827, (citing e.g. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)(right to counsel); Tumey v. State of Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (right to impartial judge)); see also Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); State v. Bobo, 814 S.W.2d 353, 358 (Tenn. 1991).

[4]See e.g. Schad v. Arizona, 501 U.S. 624, 646, 111 S.Ct. 2491, 2504, 115 L.Ed.2d 555 (1991); Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)(discussing the due process violation which occurs if a jury is required to choose between conviction of a capital offense or acquittal, even though there is evidence in the record to support an instruction and conviction of a lesser non-capital offense); see also Strader, supra, (discussing the denial of the right to a jury trial which results when a trial court fails to charge the jury with respect to any lesser offenses even though the evidence would have supported an instruction upon a lesser offense.) It is significant to note that this Court's decision in Strader was rendered prior to the utilization of harmless error analysis for constitutional violations. See also David F. Abele, Comment, Jury Deliberations and the Lesser Included Offense Rule: Getting the Courts Back in Step, 23 U.C.Davis L. Rev. 375, 377 (Winter, 1990).

[5]That statute provides as follows: "It is the duty of all judges charging juries in cases of criminal prosecutions for any felony wherein two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all the law of each offense included in the indictment, without any request on the part of the defendant to do so."

included offense does not automatically result in reversal. Instead, this Court stated in <u>Good</u>

that reversal is required only if the defendant has been prejudiced by the error. <u>See</u> <u>also</u>

<u>Rushing v. State</u>, 196 Tenn. 515, 268 S.W.2d 563 (Tenn. 1954); <u>Frazier v. State</u>, 117 Tenn.

430, 100 S.W. 94 (1907); <u>Powers v. State</u>, 117 Tenn. 363, 97 S.W. 815 (1906); <u>Wilson v.</u>

<u>State</u>, 109 Tenn. 167, 70 S.W. 57 (1902); <u>Morton v. State</u>, 91 Tenn. 437, 19 S.W. 225

(1892); <u>Tarvers v. State</u>, 90 Tenn. 485, 16 S.W. 1041 (1891); <u>State v. Hargrove</u>, 81 Tenn.

178 (1884); <u>Parham v. State</u>, 78 Tenn. 498 (1882). The substance of the holding in <u>Good</u>

is now contained in Rule 52(a), Tenn. R. Crim. P., which provides "No judgment of conviction

shall be reversed on appeal except for errors which affirmatively appear to have affected the

result of the trial on the merits." Likewise, Rule 36(b), Tenn. R. App. P. provides that "[a]

final judgment from which relief is available and otherwise appropriate shall not be set aside

unless, considering the whole record, error involving a substantial right more probably than

not affected the judgment or would result in prejudice to the judicial process." <u>Compare</u>

Tenn. R. App. P. 3(e) (Appellate review of challenges to jury instructions refused or given

are waived if not raised in the motion for new trial). Accordingly, we conclude that a trial

court's erroneous failure to instruct on vlontary manslaughter is subject to harmless error

analysis. Reversal is required if the error affirmatively appears to have affected the result

of the trial on the merits, or in other words, reversal is required if the error more probably

than not affected the judgment to the defendant's prejudice. <u>See</u> <u>e.g.</u> <u>State v. Hamm</u>, 611

S.W.2d 826 (Tenn. 1981) (applying harmless error analysis and concluding that the trial

court's failure to instruct upon the lesser offense constituted prejudicial error).[6]

---

[6]Many of the cases relied upon by the dissent to support its position that reversal is automatically required when a trial court fails to instruct upon a lesser offense either do not support that position or are clearly distinguishable from the circumstances of this case. For example, the decision in <u>Frazier v. State</u>, 117 Tenn. 430, 100 S.W. 94, 96-97 (1907) is directly contrary to the dissent's position. There, this Court explicitly refused to reverse the conviction for first degree murder even though the trial court did not instruct the jury as to manslaughter and assault and battery, declaring that reversal is required only if the error is one that "prejudices [the defendant] and affects the merits of the case." In several other cases convictions were reversed only upon a finding that the failure to instruct on a lesser offense constituted prejudicial error. In <u>Potter v. State</u>, 85 Tenn. 88, 1 S.W. 614, 618 (1886), reversal was ordered only after this Court determined that the trial court's failure to charge the lesser offense constituted an "affirmative injury" to the defendant, i.e., prejudicial error. Also in <u>Templeton v. State</u>, 146 Tenn. 272, 280, 240 S.W. 789, 791 (1922), this Court reversed the conviction stating, "it cannot be said that . . . the omission of the trial judge to instruct the jury upon the subject of manslaughter

Applying that standard to the facts in this case, we conclude that the trial court's failure to instruct upon voluntary manslaughter constitutes harmless error. In this case the trial judge instructed the jury on the elements necessary to prove first degree premeditated murder, which specifically required proof that the killing was "intentional, deliberate and premeditated." Tenn. Code Ann. § 39-13-202(a) (1991 Repl.). In addition, the trial judge instructed the jury as to the lesser included offenses of second degree murder, and reckless homicide. The jurors were also instructed:

> You must first determine if the defendant is guilty of the offense of murder in the first degree as charged in the indictment. If you agree that the defendant is guilty beyond a reasonable doubt of murder in the first degree, you may stop your discussions and return your verdict.

> If you have a reasonable doubt as to the defendant's guilt of murder in the first degree, then your verdict must be not guilty as to this offense, and then you shall proceed to determine his guilt or innocence of the lesser included offense of murder in the second degree.

It is an elementary principle of law that jurors are presumed to follow the instructions of the trial court. State v. Cribbs, 967 S.W.2d 773, 784 (Tenn. 1998); State v. Laney, 654 S.W.2d 383, 389 (Tenn. 1983). By convicting the defendant of first degree murder the jury determined that the proof was sufficient to establish all the elements of that offense beyond

---

was not prejudicial to the defendant." Likewise, in Wright v. State, 549 S.W.2d 682, 686 (Tenn. 1977), the conviction was reversed only after this Court determined that the failure to charge on the lesser offense constituted "plain and prejudicial error." See also State v. Woodcock, 922 S.W.2d 904 (Tenn. Crim. App. 1995)(finding error prejudicial, citing Frazier, and reversing conviction). In other cases cited by the dissent, the jury was not instructed as to any lesser included offenses, though the record contained evidence of those offenses. See e.g. Strader, supra; State v. Vance, 888 S.W.2d 776 (Tenn. Crim. App 1994); State v. McKnight, 900 S.W.2d 36 (Tenn. Crim. App. 1994). Since the jury was given only one option, and the proof would have supported another, those cases also are clearly distinguishable from the circumstances of this case. In many of the other cases cited by the dissent, the defendant was convicted of an offense lesser than the greatest offense with which he had been charged, and on appeal complained of the trial court's failure to instruct on a second lesser offense. See e.g. Johnson v. State, 531 S.W.2d 558 (Tenn. 1975); State v. Belser, 945 S.W.2d 776 (Tenn. Crim. App. 1996); State v. Ruane, 912 S.W.2d 766 (Tenn. Crim. App. 1995); State v. Summerall, 926 S.W.2d 272 (Tenn. Crim. App. 1995). Again, the circumstances of those cases are easily distinguished from the facts in this case where the defendant was convicted of the greatest offense charged, though the jury was charged with a lesser offense. Here, the jury's verdict demonstrates that the defendant suffered no prejudice from the trial court's failure to charge the lesser offense. Finally, some of the cases cited by the dissent are distinguishable on the law. For example, in Jones v. State, 128 Tenn. 493, 495-98, 161 S.W. 1016, 1017 (1913), this Court reversed the conviction on the basis of a statute which required the jury to designate in its verdict whether the conviction was for first or second degree murder. The Court stated that the trial court's failure to instruct the jury as to second degree murder "withdrew from the jury a question which the Code specifically required should be submitted to them." The Court specifically noted that, with respect to the failure to instruct on other types of homicide, "the rule laid down in Good v. State applies." Likewise, in State v. Forbes, 918 S.W.2d 431 (Tenn. Crim. App. 1995), the conviction was reversed on other grounds and the appellate court merely directed the trial court to instruct the jury as to all lesser offenses upon retrial.

-10-

a reasonable doubt, including that the killing was "intentional, deliberate and premeditated." In other words, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, second degree murder, the jury necessarily rejected all other lesser offenses, including voluntary manslaughter. Accordingly, the trial court's erroneous failure to charge voluntary manslaughter is harmless beyond a reasonable doubt because the jury's verdict of guilt on the greater offense of first degree murder and its disinclination to consider the lesser included offense of second degree murder clearly demonstrates that it certainly would not have returned a verdict on voluntary manslaughter.[7] See State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990) (Any possible error in failing to instruct voluntary and involuntary manslaughter, when second degree murder was charged and the defendant was convicted of first degree felony murder, was "completely harmless."); State v. Blanton, 926 S.W.2d 953 (Tenn. Crim. App. 1996); State v. Newsome, 744 S.W.2d 911 (Tenn. Crim. App. 1987); State v. Atkins, 681 S.W.2d 571 (Tenn. Crim. App. 1984); see also State v. White, 697 P.2d 328, 330 (Ariz. 1985)("[B]y finding defendant guilty of the highest offense, to the exclusion of the immediately lesser-included offense, second degree murder, the jury necessarily rejected all other lesser included offenses."); Taylor v. State, 799 S.W.2d 519, (Ark. 1990) ("[T]he jury convicted appellant on the greater offense of first degree murder even though the lesser included offense of second degree murder had been given. Under these circumstances, we have held that any error resulting from the failure to give lesser included offenses is cured."); People v. Mullins, 532 P.2d 733, 735 (Colo. 1975) ("The jury rejected the less serious offense of two alternatives. If the jury had been given three alternatives, the resulting verdict would have undoubtedly been the same as here."); Lilly v. State, 649 a.2d 1055,1063 (Del. 1994) ("The jury's decision to convict [the defendant] of Murder in the Second Degree and to reject the option of . . . Criminally Negligent Homicide

---

[7]Any prior appellate decisions inconsistent with our holding herein are hereby expressly overruled. See e.g. State v. Staggs, 554 S.W.2d 620 (Tenn. 1977); State v. Howard, 926 S.W.2d 579 (Tenn. Crim. App. 1996); (no perm. app. filed); State v. King, 905 S.W.2d 207 (Tenn. Crim. App. 1995); State v. Lewis, 919 S.W.2d 62 (Tenn. Crim. App. 1995) (no perm. app. filed).

leads this Court to conclude that the Superior Court's erroneous decision not to instruct the jury regarding Vehicular Homicide was harmless beyond a reasonable doubt."); State v. Nowlin, 244 N.W.2d 591, 596 (Iowa 1976) ("Where both first and second-degree murder verdicts are submitted and a first-degree murder conviction is returned, there is no prejudice for failure to instruct on manslaughter."); State v. Shoemaker, 432 S.E.2d 314, 324 (N.C. 1993) ("A verdict of murder in the first degree shows clearly that the jurors were not coerced, for they had the right to convict in the second degree. That they did not indicates their certainty of [defendant's] guilt of the greater offense. The failure to instruct them that they could convict of manslaughter therefore could not have harmed the defendant."); State v. No Heart, 353 N.W.2d 43 (S.D. 1984) ("In view of the fact that the jury had an opportunity to consider a lesser included offense (grand theft), but returned a verdict of guilty on the greater offense, we can see no prejudicial error in the trial court's failure to also instruct on petty theft first degree and petty theft second degree."); State v. Gotschall, 782 P.2d 459 (Utah 1989) ("We conclude that even if it was error for the trial court not to instruct the jury on negligent homicide . . . the error was harmless. The jury had the opportunity to find that [the defendant] acted with a lesser mental state than that required for second degree murder when it was given a manslaughter instruction, yet it convicted Gotschall of second degree murder.");Britton v. State, 631 So.2d 1073, 1080 (Ala. Crim.App. 1993) ("[T]rial court's failure to charge the jury on vehicular homicide as a lesser included offense of murder is harmless error where the jury was charged on the lesser included offense of manslaughter and criminally negligent homicide and it rejected those offenses and found the defendant guilty of murder."); Ridgely v. State, 739 P.2d 1299, 1301 (Alaska. App. 1987) ("Given the jury's rejection of second-degree murder as a lesser-included offense, it is evident that [the defendant] suffered no prejudice, even assuming the challenged manslaughter instruction was inadequate."); People v. Dominguez, 15 Cal.Rptr.2d 46, 52 (Cal. App. 1992) (Failure to instruct on additional lesser included offense of grand theft in trial on charges of first-

degree residential robbery was harmless error, where jury was properly instructed on lesser included offense of petty theft.); People v. Zak, 457 N.W.2d 59, 66 (Mich. App. 1990) ("Where the trial court instructs on a lesser included offense which is intermediate between the greater offense and second lesser included offense, for which instructions were requested by the defendant and refused by the trial court, and the jury convicts on the greater offense, the failure to instruct on that requested lesser included is harmless . . . . "); Turner v. Commonwealth of Virginia, 476 S.E.2d 504 (Va. App. 1996) ("[W]e conclude that the jury in this case, by rejecting the lesser-included offense of second-degree murder, necessarily rejected the factual basis upon which it might have rendered a verdict on the lesser-included offense of voluntary manslaughter."); State v. Barriault, 581 P.2d 1365, 1371 (Wash. App. 1978) ("The trial court did instruct on first-degree manslaughter, but the jury found defendant guilty of the greater offense of second degree murder. The jury verdict indicates that the defendant was not prejudiced by the failure to give a second-degree manslaughter instruction."); State v. Truax, 444 N.W.2d 432 (Wis. Ct. App. 1989) (Any error resulting from omission of jury instructions on homicide by reckless conduct was harmless in light of the fact that the jury received instruction on both first degree and second degree murder and found the defendant guilty of the greater offense.).

Having determined that the trial court's failure to charge voluntary manslaughter does not constitute reversible error, we must next consider the Court of Criminal Appeals' conclusion that the jury was permitted to consider inadmissible hearsay evidence.

**ALLEGED EVIDENTIARY ERROR**

This issue pertains to the ruling of the Court of Criminal Appeals that the testimony of Gloria Buchanan, the woman with whom Thomas had been living at the time of his death was inadmissible hearsay. As previously stated, at trial Buchanan testified that her

underage daughter, Glorissa Buchanan, had been involved in a knife fight with the defendant's sister, Valencia Williams. Glorissa Buchanan was prosecuted in juvenile court as a result of having stabbed Valencia Williams. The victim, Delaney Thomas, testified on behalf of Glorissa Buchanan in the juvenile proceeding. At the defendant's trial, Gloria Buchanan was permitted to recount the testimony given by Thomas during the hearing in the juvenile court. Buchanan stated that Thomas had testified that immediately after the stabbing, the defendant had hit Glorissa Buchanan with a rifle. The trial court admitted this testimony as "non-hearsay" evidence of the defendant's motive for shooting and killing Thomas some five days after the juvenile hearing.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). We agree with the trial court that the declarant's statement in this case was not hearsay because it was not admitted for the truth therein, i.e., that the defendant had struck Buchanan. Rather, the statement was admitted for the purpose of showing the "bad blood" between the Buchanan family, with which the victim was aligned, and the Williams family, of which the defendant was a member. In fact, the falsity of the statement would have increased the probative value of the evidence. Accordingly, the trial court did not allow the jury to consider inadmissible hearsay.

## CONCLUSION

Having concluded that the trial court's erroneous failure to instruct the jury on voluntary manslaughter is harmless error, and that the admission of Gloria Buchanan's testimony was not error, we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court in accordance with the jury verdict.

_____
FRANK F. DROWOTA, III,
Justice

**Concur:**
Anderson, C.J.
Holder, J.

Birch, J. and Reid, Sp.J. - See Separate Dissenting Opinion.


IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

(HEARD AT JOHNSON CITY)

FILED

September 21, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | FOR PUBLICATION |
| | ) | |
| Appellant | ) | FILED: |
| | ) | |
| | ) | HAMILTON COUNTY |
| v. | ) | |
| | ) | HON. STEPHEN M. BEVIL, |
| | ) | JUDGE |
| WILLIE WILLIAMS, JR. | ) | |
| | ) | NO. 03-S-01-9706-CR-00060 |
| Appellee | ) | |


DISSENTING OPINION


Because I find that the failure to instruct the jury on voluntary manslaughter is a violation of the basic constitutional

right to trial by jury, I respectfully dissent.  In my view, because there is evidence to support a conviction of voluntary manslaughter, the failure of the trial judge to charge that offense requires reversal and a new trial.

The majority reasons that the right to a jury instruction on a lesser offense derives primarily from statute, although it is "sometimes described as a constitutional right."  Thus, the majority has no qualms about applying harmless error analysis to a violation of that right.  I find, however, that not only is the instruction required by Tenn. Code Ann. § 40-18-110(a), but it is also constitutionally required.  The right to a trial by jury, guaranteed by Tenn. Const. art. I, § 6, includes the right to have every issue established by the proof tried and determined by the jury under a correct and complete charge of the law.  Without a complete charge, the jury simply cannot determine every issue established by the proof.  Thus, the right to a complete charge is an inherent part of the right to a jury trial.  State v. Staggs, 554 S.W.2d 620, 626 (Tenn. 1977); Strader v. State, 210 Tenn. 669, 682-83, 362 S.W.2d 224, 230 (1962).

In Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed.2d 705 (1967), the Supreme Court upheld the application of a harmless error analysis to federal constitutional errors in state criminal trials.  The Court acknowledged, however, that there are some constitutional rights so basic to a fair trial that their violation can never be treated as harmless error.  Id. at 23, 87 S. Ct. at 827, 17 L. Ed.2d at 710 (citing, e.g., Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed.2d 799 (1963)(right to

-16-

counsel); <u>Tumey v. Ohio</u>, 273 U.S. 510, 47 S. Ct. 437, 71 L.Ed. 749 (1927)(right to impartial judge)).

Article I, Section 6 of the Tennessee Constitution states that "the right of trial by jury shall remain inviolate." Indeed, the right to a trial by jury is a basic, fundamental guarantee. It is uniquely within the sole province of the jury to determine how much and what parts of the evidence are to be believed and to determine whether the defendant is guilty of any one or none of the offenses. <u>Strader</u>, 210 Tenn. at 675, 362 S.W.2d at 227. And as this Court has previously determined, "errors affecting the constitutional right to trial by jury will result in such prejudice to the judicial process that automatic reversal is required." <u>State v. Bobo</u>, 814 S.W.2d 353, 358 (Tenn. 1991). "Such violations are defects in the structure of the trial mechanism and thus defy analysis by harmless error standards." <u>Id.</u> (<u>citing</u> <u>Arizona v. Fulminante</u>, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed.2d 302 (1991)); <u>see</u> <u>also</u> <u>Ricketts v. Carter</u>, 918 S.W.2d 419, 424 (Tenn. 1996)(rejecting application of a harmless error analysis in a civil case where the right to trial by jury was compromised). I adhere to and reiterate our prior decisions holding that harmless error standards cannot be applied to salvage a conviction where the defendant has been deprived of the right to a trial by jury.

That failure to charge a lesser offense may violate the right to a jury trial is not new to Tennessee law. <u>See</u> <u>Strader</u>, 210 Tenn. at 682-83, 362 S.W.2d at 230. Neither is the requirement of reversal, in the event of such violation. "[W]here the evidence, upon any view the jury may take of it, permits an inference of guilt

as to such lesser included offenses, it is the mandatory duty of the Trial Judge to charge all the law as to each of such offenses, and a failure to do so requires a reversal and a new trial.  Our cases have expressed this rule in variant language."  Id. at 679, 362 S.W.2d at 228-29 (emphasis added)(citing Poole v. State, 61 Tenn. 288, 294 (1872); Potter v. State, 85 Tenn. 88, 98, 1 S.W. 614, 618 (1886); Frazier v. State, 117 Tenn. 430, 440-41, 100 S.W. 94, 96-97 (1907); Jones v. State, 128 Tenn. 493, 495-98, 161 S.W. 1016, 1016-17 (1913); and Templeton v. State, 146 Tenn. 272, 280, 240 S.W. 789, 791 (1922)).  Tennessee courts have consistently reversed convictions when a trial court failed to instruct the jury on a lesser offense, so long as the record included proof supporting a verdict of guilt on that lesser offense.  See, e.g., Staggs, 554 S.W.2d 620 (failure to charge attempt to commit robbery in robbery case was reversible error where proof would have supported a verdict for lesser-included offense); Wright v. State, 549 S.W.2d 682 (Tenn. 1977)(failure to charge shoplifting in petit larceny case was reversible error where proof established the elements of lesser-included offense); Johnson v. State, 531 S.W.2d 558 (Tenn. 1975)(failure to charge petit larceny and larceny in robbery case was reversible error where proof showed that the property was worth less than one hundred dollars and may have been taken from back seat of victim's car, not from victim herself); Spencer v. State, 501 S.W.2d 799 (Tenn. 1973)(failure to charge joyriding in grand larceny case was reversible error because proof supported a finding that the defendant took the vehicle and used it on a "frivolous adventure").[8]

_____

[8]The Court of Criminal Appeals has consistently applied this principle as well.  See, e.g., State v. Belser, 945 S.W.2d 776, 791 (Tenn. Crim. App. 1996)(failure to charge voluntary manslaughter in first-degree murder case was reversible error even though second-degree murder and negligent homicide were charged because proof included evidence that defendant acted in state of passion produced by adequate provocation); State v. Ruane, 912 S.W.2d 766, 783 (Tenn.

In the instant case, the defendant testified that the victim shot at the defendant's house while his family was inside and further that the defendant "panicked" when he unexpectedly came in contact with the victim a short time later. At least some of the facts adduced at trial, such as the 911 call during which the defendant reported the incident, arguably corroborated his testimony. I agree with the Court of Criminal Appeals that the evidence sufficiently raised the issue of "passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a)(1991). The jury reasonably could have accepted his testimony and convicted him of voluntary manslaughter, had that offense been included in the jury's instructions.

Admittedly, both the majority view and the view which this dissent expresses are adequately, at least, supported. After careful analysis, however, I cannot reach the same conclusion as the majority. It was the jury's function to decide the offense, if any, upon which to convict the defendant. However plain it may be to the trial court or the reviewing courts that the evidence was sufficient to support a conviction for the greater offense of first-degree murder, failure to instruct on all offenses raised by the evidence deprives the defendant of his right to a jury trial. Poole, 61

Crim. App. 1995)(failure to charge voluntary manslaughter and attempted voluntary manslaughter in first-degree murder case was reversible error where there was evidence of passion produced by adequate provocation); see also State v. Howard, 926 S.W.2d 579, 586-87 (Tenn. Crim. App. 1996); State v. Woodcock, 922 S.W.2d 904, 914 (Tenn. Crim. App. 1995); State v. Summerall, 926 S.W.2d 272, 278 (Tenn. Crim. App. 1995); State v. Boyce, 920 S.W.2d 224, 227 (Tenn. Crim. App. 1995); State v. Lewis, 919 S.W.2d 62, 68-69 (Tenn. Crim. App. 1995); State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995); State v. King, 905 S.W.2d 207, 214 (Tenn. Crim. App. 1995); State v. McKnight, 900 S.W.2d 36, 53 (Tenn. Crim. App. 1994); State v. Vance, 888 S.W.2d 776, 781 (Tenn. Crim. App. 1994); State v. Wright, 618 S.W.2d 310, 317 (Tenn. Crim. App. 1981). But see, e.g., State v. Blanton, 926 S.W.2d 93 (Tenn. Crim. App. 1996).

Tenn. at 294. I would thus be constrained to reverse the conviction and remand the case to the trial court for a new trial. Accordingly, I respectfully dissent.

I am authorized to state that Special Justice Reid joins this dissenting opinion.

_____
ADOLPHO A. BIRCH, JR., Justice