# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## STATE OF TENNESSEE v. ANTONIO SMITH

**Direct Appeal from the Criminal Court for Shelby County**
**No. 97-04418     Honorable W. Fred Axley, Trial Judge**

**No. W1999-01096-CCA-R3-CD - Decided April 20, 2000**

The defendant appeals his second degree murder conviction. The trial court's failure to instruct on lesser included offenses was error, but harmless. The defendant's sentence is reduced in light of sentencing errors.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified**

WILLIAMS, J. delivered the opinion of the court, in which HAYES and GLENN, JJ. joined.

AC Wharton, Jr., Public Defender, and Tony N. Brayton, Assistant Public Defender, Memphis, Tennessee, for the appellant, Antonio Smith.

Paul G. Summers, Attorney General and Reporter, J. Ross Dyer, Assistant Attorney General, William L. Gibbons, District Attorney General, Rosemary Andrews and William Bond, Assistant Attorney Generals, for the appellee, State of Tennessee.

## OPINION

The defendant, Antonio Smith, appeals from his conviction and sentence for second degree murder. After conviction by a Shelby County jury, the trial court sentenced the defendant as a Range I offender to the maximum 25 year sentence. The defendant asserts that the trial court erred by not instructing the jury on the lesser offenses of criminally negligent homicide and reckless homicide and by misapplying certain enhancement factors. We affirm his conviction under a harmless error analysis, but modify his sentence in light of sentencing errors.

## FACTS

On the day the victim was slain, he was helping his cousin, Shunoid Johnson, move from Breezy Point Apartments in Memphis, Tennessee. Shunoid testified that he saw the defendant and "Blue" Massey approaching from another apartment complex. The defendant, Massey, and the victim walked around the breezeway of the apartments out of Shunoid's view. A few minutes later,

Shunoid heard gunshots. He ran to see what had happened and met the victim, bleeding from his chest. He saw the victim as he fell to the ground. The defendant approached and said, "You all ain't seen none of this," before leaving on foot. Shunoid saw a handgun in the defendant's waistband.

Clifford Massey, a.k.a. "Blue," testified that he knew the defendant was carrying a weapon but did not know of any plan to confront the victim. According to Massey, the defendant and the victim, after walking around the breezeway, discussed the victim's debt to the defendant. Although Massey did not participate in this discussion, he said that the victim told the defendant he would pay when he could. Massey stated that the defendant told the victim to take his hand out of the pocket several times. Massey said that when the victim's hand came from the pocket, it was balled up. Although Massey thought the victim may have pulled an object from the pocket, he could not be certain. Massey had turned his head as the victim drew his hand, and he heard the shot but did not see the actual shooting.

Robert Wilkins, a nephew of the victim, was on the upstairs breezeway of the apartment complex when he overheard the defendant ask the victim if he had the "package." The victim stated that he would have it on Friday. During the discussion, Robert testified that the victim apparently anticipated violence, because he warned the defendant that if he shot him, then he would go to jail. Robert stated that the defendant then said, "F___ the police." Robert then heard a shot. Robert saw the victim stagger through the breezeway. Robert testified that the defendant walked to the victim, kicked him, and said to the onlookers, "You all didn't see this."

Medical testimony established that the victim died from a gunshot wound to the chest, inflicted from no less than two feet. The victim's blood contained small amounts of cocaine and cocaine metabolites and had an alcohol level of .09.

### The Defendant's Proof

R. J. Bradford testified for the defendant. Bradford, a cousin of both Shunoid Johnson and the defendant, was also helping Shunoid move. He stated that the victim had used a folding knife with an approximate four-and-a-half inch blade to disassemble furniture that day. Bradford stated that they had consumed gin and beer[1] with the victim. He also said that the victim smoked crack cocaine that day. He stated that he overhead the conversation between the defendant and the victim. He said that the victim told the defendant he would give "it" to him when he got it. Bradford overhead the defendant say, after the shooting, "Man, I didn't want to shoot you." Bradford did not hear any other statements.

The defendant testified that he had paid the victim $100 to move furniture from a relative's residence. However, the victim had not completed the job. The defendant admitted he had a weapon on his person because "things happen" in his neighborhood. He and the victim walked around the

---

[1] Shunoid also stated that he and the victim had consumed beer that day.

breezeway. The defendant said that he then asked the victim to finish the moving job. The victim declined and refused to return the $100. The defendant testified that he became apprehensive because the victim appeared to fumble with something in that pocket. He asked the victim, at least twice, to remove his hand from his pocket. When the victim did remove his hand, he swung at the defendant with an open knife from that pocket. The defendant stated that, although he did not intend to shoot the defendant at that point, the weapon discharged as he drew it.[2] After apologizing to the victim's relatives, he fled the scene and disposed of the weapon. When he left, he thought that the knife was still in the victim's hand.

Shunoid stated that the victim did not have a weapon in his hands after he had been shot. Also, investigating officers who searched both the scene and the victim's person and clothes found no knife.

Latara Fulton stated that she heard the victim deny the defendant's request for return of his money. She had a partial view of the participants in the conversation, and although she could not see if anything was in the victim's hand, she saw him swing at the defendant. The defendant, sought by police, stayed that night at Fulton's residence.

After hearing this testimony, a Shelby County jury found the defendant guilty of the second degree murder of the victim. The trial court sentenced him to 25 years in the Department of Correction. He now appeals.

## ANALYSIS

This appeal presents two issues for review, one regarding lesser offense instructions and one challenging the trial court's application of enhancement factors during sentencing.

### Lesser Offense Instructions

In the instant case, the defendant was charged with and convicted of second degree murder. The defendant asserts that the trial court erred by not issuing instructions regarding two lesser offenses:

(1) Criminally negligent homicide, in which death results from criminally negligent conduct, see Tenn. Code Ann. § 39-13-212(a); and
(2) reckless homicide, the reckless killing of another, see Tenn. Code Ann. § 39-13-215(a)(1).

Such failure, asserts the defendant, violated his right to trial by jury guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, § 6 of the Constitution

---

[2] His assertion that the muzzle of the weapon was pointing up when fired contradicted medical testimony that the bullet travelled a downward path in the victim's body.

of the State of Tennessee.

In 1999, the Tennessee Supreme Court adopted modified language from the Model Penal Code regarding lesser offenses in Tennessee criminal jurisprudence, thereby modifying the applicable analysis.

> An offense is a lesser included offense if:
> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition part (a) only in the respect that it contains a statutory element or elements establishing (1) a different mental state indicating a lesser kind of culpability; and/or (2) a less serious form or risk of harm to the same person, property, or public interest; or
> (c) it consists of (1) facilitation of the offense charged or of an offense that otherwise meets the definition of the lesser included offense in part (a) or (b); or to an attempt to commit the offense charged on offense that otherwise meets the definition of lesser included offense in part (a) or (b); or (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in part (a) or (b).

See State v. Burns, 6 S.W.3d 453, 467 (Tenn. 1999); see also State v. Dominy, 6 S.W.3d 472 (Tenn. 1999).

If an offense is determined as a lesser offense of a given charge, the trial court examines the relevant evidence. Without addressing the credibility of the evidence, "[a] trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense." See Burns, 6 S.W.3d at 469. That court must then determine, in a light most favorable to the existence of the lesser offense, if the evidence "is legally sufficient to support a conviction for the lesser-included offense." Id.

### Criminally Negligent Homicide and Reckless Homicide

Criminally negligent homicide requires that the accused engage in criminally negligent conduct that results in death, and reckless homicide is the reckless killing of another. See Tenn. Code Ann. §§ 39-13-212(a), -215(a)(1). These homicides differ from second degree murder, as charged in the instant case,[3] only in the degrees of culpability, as second degree murder is the knowing killing of another. See Tenn. Code Ann. § 39-13-210(a)(1). Therefore, the lower offenses would be lesser offenses of second degree murder under these circumstances. See Burns, 6 S.W.3d at 467.

---

[3] A conviction for second degree murder can also result from death caused by unlawful distribution of Schedule I or Schedule II drugs. See Tenn. Code Ann. § 39-13-210(a)(2).

## Evidentiary Analysis

If the defendant's proof is credited, then that evidence could be construed as proving that the defendant drew a loaded weapon when he could have fled from the alleged knife attack and that the defendant either knew or should have known that the weapon could discharge and thereby kill the victim. Further, to disregard this risk or to fail to perceive it could constitute a gross deviation from the applicable standard of care. Therefore, the trial court should have issued the instructions.

## Harmless Error Analysis

Although instructions on lesser offenses are a constitutional right under some circumstances, a trial court's failing to issue such instructions is subject to harmless error analysis. See State v. Williams, 977 S.W.2d 101, 104-05 (Tenn. 1998). A trial court also has a statutory duty to charge the jury "wherein two (2) or more grades or classes of offense may be included in the indictment," even absent a request for such instruction from the defendant. See Tenn. Code Ann. § 40-18-110(a). On review, this Court inquires whether the error more probably than not affirmatively affected the judgment. See id.; see also T.R A.P. 36(b); Tenn. R. Crim. P. 52(a).

The Williams jury, charged on the offenses of first degree and second degree murder, returned a guilty verdict on the greater charge. See Williams, 977 S.W.2d at 104. On the defendant's appeal, the state conceded that the proof was legally sufficient to warrant an instruction on voluntary manslaughter, an instruction that the trial court declined to issue. See id.

The Tennessee Supreme Court noted that the Williams trial court had instructed the jury:
(1) on the elements of first degree murder;
(2) that the state must prove each element, beyond a reasonable doubt; and
(3) that if the jury failed to find the state had carried the burden on each and every
    element, then that body should consider the elements of second degree murder.
See id. A jury is presumed to follow instruction from a trial court, see State v. Cribbs, 967 S.W.2d 773, 784 (Tenn. 1998), and the jury's guilty verdict on first degree murder necessitated their rejection of all lesser offenses, both charged and uncharged, see Williams, 977 S.W.2d at 106. Therefore, the error was harmless. See id.

In the instant case, the trial court instructed the jury as to voluntary manslaughter, a Class C felony. See Tenn. Code Ann. § 39-13-211. The jury rejected this lesser charge and found the defendant guilty of the higher offense as in Williams.

## Sentencing

The defendant argues that the trial court erred in applying certain factors to enhance his

sentence. This Court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. See State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W.2d at 785, 789 (Tenn. Crim. App. 1991).

In the instant case, the trial court's sentencing determination is not entitled to the presumption of correctness because the trial court erred in applying Tenn. Code Ann. §§ 40-35-114(8), (10) and (16) as enhancing factors. Factor (8) is not supported by the record. Factor (10) is inapplicable because it is inherent in the offense of second degree murder. See State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994). Factor (16) can not be considered to enhance a sentence for second degree murder. See State v. Belser, 945 S.W.2d 776, 792 (Tenn. Crim. App. 1996). Accordingly, we will review the sentence under a purely de novo standard.

**De Novo Review**

We first determine that the appropriate range of sentence for second degree murder, a Class A felony, Range I Standard offender is 15 - 25 years. Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence for a Class A felony shall be 20 years, the midpoint of the range absent either enhancement or mitigating factors.

Now we review for enhancement factors. The defendant does not contest and we agree with the trial court's application of enhancing factors (1) and (9). See Tenn. Code Ann. § 40-35-114 (1) (9). That is, we find that the defendant has a previous history of criminal convictions and that he used a firearm in the commission of the offense.

We agree with the trial court and find no mitigating factors. We now weigh the enhancing factors in accordance with the appropriate sentencing principles and sentence the defendant to 22 years. We place weight on enhancing factors (1) and (9) and enhance from the presumptive 20 years.

**CONCLUSION**

We affirm the conviction from the trial court but reduce the defendant's sentence to 22 years.

Judge John Everett Williams
Judge David G. Hayes
Judge Alan E. Glenn