IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 9, 2002

## STATE OF TENNESSEE v. WALTER WILSON

**Appeal from the Criminal Court for Shelby County**
**No. 99-13438-39      Joseph B. Dailey, Judge**

---

**No. W2001-01463-CCA-R3-CD  - Filed September 4, 2002**

---

Walter Wilson, the defendant, was convicted of second-degree murder, felony murder, and attempted especially aggravated robbery by a Shelby County jury. The jury sentenced the defendant to life without the possibility of parole for the felony-murder conviction, and the trial court imposed a consecutive, ten-year sentence in the Department of Correction for the attempted especially aggravated robbery. On appeal, the defendant contends that the evidence was insufficient to support his convictions, that applicable lesser-included offenses were not charged to the jury, and that consecutive sentencing is inappropriate because he is not a dangerous offender. We affirm the attempted especially aggravated robbery conviction, but we reverse and remand for a new trial on the homicide counts based on the failure to instruct on lesser-included offenses.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed in Part, Reversed in Part, and Remanded for a New Trial in Part.**

JAMES CURWOOD WITT, JR., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

A.C. Wharton, Jr., District Public Defender; W. Mark Ward, Assistant Public Defender (on appeal); and Trent Hall, Assistant Public Defender (at trial), for the Appellant, Walter Wilson.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steven Jones and Amy Weirich, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

On May 22, 1999, in a Memphis alley near the intersection of Majorie and Shamrock, Derrick Bynum was shot in the head as he was sitting in his pick-up truck. Mr. Bynum, who was 27 years old at the time, had left home to go to work about 5:30 a.m. He was discovered by a neighborhood resident later that morning inside his pickup truck, which had come to rest against

some shrubbery approximately 434 feet from the scene of the shooting. The back window of the truck was broken out, but the front windshield was intact. Mr. Bynum was transported by ambulance to a nearby hospital where he died the following day. A resulting autopsy identified the cause of death as a single gunshot wound to the left eye that entered the victim's brain.

Fifteen to seventeen Memphis police officers participated in the investigation. They canvassed the neighborhood for information about the homicide. Based on debris and tire marks, the police traced the path of the truck and determined that the shooting occurred in Chestnut Alley. Latent fingerprints lifted from the victim's truck could not be identified.

In the light most favorable to the state, the evidence at trial showed the following. While in the alley area of the shooting, Patrol Officers Delbert Polk and Derrick Wilks saw four male individuals on the front porch of a nearby residence. The residence was located at 1657 Victor, and it faced the alley. The officers walked up to the men on the porch to see if they had any pertinent information. The officers identified the men as fifteen year-old Brandon McKinney, Demario Wilson, Aubrey Ushera, and Damien Wilson. Ushera and the Wilsons lived at the residence with their older brother, the defendant.

Officer Polk testified at trial that McKinney appeared very nervous and would look elsewhere whenever he was asked a question. McKinney was sitting on a red couch on the porch, and Officer Polk told him to stand up. When McKinney stood, Officer Polk said that he observed a block-shaped object in the right front pocket of McKinney's pants. A subsequent pat down and search uncovered a .25 semi-automatic handgun in McKinney's pocket. The other men were searched, but no other weapons were discovered. McKinney was handcuffed and transported to the police station for questioning.

Brandon McKinney testified for the state at trial. At the time of the shooting he was living with his grandmother at 759 Cherokee. He testified that he got up on May 22, 1999 and that his brother, Christopher Holt, came by the house and wanted McKinney to walk to the store. Along the way, the boys encountered the defendant's brother, Aubrey Ushera, who asked McKinney to buy him some juice at the store. McKinney did so, and he stopped at the house on Victor to give the juice to Ushera. McKinney testified that Demario Wilson was sitting on the red sofa on the porch. McKinney sat down with Demario Wilson, and everyone else went inside the house.

About 8:30 a.m., the defendant walked down the street to the house and went inside. McKinney testified that the defendant's brother, Damien, addressed the defendant and said, "You know, you killed that man." According to McKinney, the defendant replied, "I didn't mean to do it." McKinney further testified that the defendant acted scared and kept repeating that he "didn't mean to do it." Ushera tried to reassure the defendant that he was going to be alright, and Ushera told the defendant to "calm down." The defendant then went into the back room to get dressed to go to a funeral. Although McKinney said that he never heard the defendant explain why he shot the victim, he did overhear others talking about the shooting while the defendant was in the room. McKinney testified that what he heard was that the defendant "was trying to rob the man, and that

the man said 'F-you,' or something like that. And when he said that, [the victim] tried to back out the driveway – or pull out the driveway, that [the defendant] just shot him."

McKinney testified that he also overheard the defendant ask Ushera if Ushera had hidden the gun. Ushera told the defendant that he had not. "I'm still trying to find a place to hide it." Ushera took the gun and put it in the attic, but he soon retrieved it. Ushera emptied the bullets from the gun; he cleaned the gun and put it and the bullets inside a paper bag. McKinney testified that Ushera told him to take the bag and dispose of it in the abandoned house next door. McKinney said that he did as he was told. After the defendant dressed, he left to attend a funeral. McKinney and the others at the house went outside to the porch. McKinney testified that the police were in the area at the time, and the police eventually walked up to the house and began asking questions.

McKinney admitted at trial that he was very nervous when the police came up to the porch. When the police discovered his gun and placed him in a cruiser, McKinney at first denied knowing anything about the shooting. McKinney testified that one of the officers commented that because the house was facing the alley, someone should have heard something. McKinney claimed that he was asleep. An officer remarked, "Well, I've got a .25 automatic and a dead body." At that point, McKinney testified that he became very scared and "started telling the police everything."

The police found the murder weapon in the abandoned house identified by McKinney. Agent Teri Arney with the firearms identification unit of the Tennessee Bureau of Investigation test fired the gun, and she gave her opinion at trial that the bullet recovered from the victim's body was fired by the recovered gun.

Sergeant James Ryall was the case officer assigned to the homicide. He participated in interviewing McKinney at the police station. He testified that after talking with McKinney and after finding the murder weapon, the investigation focused upon the defendant and his brother, Ushera. Officer Thurman Richardson was given the task of locating and arresting the defendant. Officer Richardson found the defendant the next day at an apartment in Hurt Village. The defendant was visiting his sister, Torina Ushera, and his nephew.

Torina Ushera testified at trial that both the defendant and Aubrey Ushera spent Saturday night with her. The defendant admitted to her that he shot a man. He told her that he shot the man "for some dope so he could get the lights back on."[1] According to Torina Ushera, the defendant also told her that Aubrey Ushera was not involved in the shooting but that McKinney was with him when the victim was shot. Torina Ushera said that both she and Aubrey Ushera urged the defendant "to turn himself in."

When the police arrived at Hurt Village on Sunday, they located the defendant and Aubrey Ushera in different apartments. Sergeant Ryall testified that as officers escorted the arrestees

---

[1] When the victim's truck was searched, the police found an unloaded weapon inside a box and a blue cooler containing marijuana and a set of scales.

out of the apartments, Aubrey Ushera started screaming that he was "wasn't going to take a charge" for his brother and "head-butted" the defendant.

Aubrey Ushera was never charged in connection with the victim's homicide. He testified for the state at trial. He explained that on May 22, he was living with the defendant and two other brothers at the house on Victor. At approximately 4:00 a.m., the defendant came home. Ushera testified that the defendant said that there was a truck in the alleyway. The defendant told Ushera that he was going to rob the truck driver, whereupon the defendant grabbed a gun from the table and left the house. As for the defendant's motive for the robbery, Ushera testified that the defendant said, "For some dope money."

Aubrey Ushera said that he heard one gunshot after the defendant left. The defendant came back to the house, and Ushera testified that the defendant put the gun on the refrigerator, left to have his hair cut, returned to the house, dressed, and departed to attend the funeral of "Big Stein." Concerning the murder weapon, Ushera testified that after the defendant had his hair cut, the defendant "came through there with a paper sack and told Brandon [McKinney] to get rid of the gun." Ushera admitted that he placed the gun in the sack and gave it to McKinney to dispose of pursuant to the defendant's instructions. Ushera identified the gun at trial as belonging to the defendant. Regarding what happened in the alley, Ushera testified that the defendant told him that "the guy seen him coming, and the guy backed up" whereupon the defendant "got in front [sic] the truck and shot, and he came – ran back down to the house."

The defendant did not testify at trial, nor did he present any evidence in defense. The jury deliberated and found the defendant guilty of the lesser-included offense of second-degree murder on the first count, guilty of felony murder as charged in the second count, and guilty of attempted especially aggravated robbery as separately charged. Following a separate penalty-phase trial, the jury sentenced the defendant to life without the possibility of parole for the felony-murder conviction. On the attempted especially aggravated robbery conviction, the trial court sentenced the defendant as a Range I offender to ten years incarceration to be served consecutively to his felony-murder sentence.

This appeal ensued.

## I. Sufficiency of the Evidence

In his lead issue, the defendant claims that the evidence is insufficient to show that he is guilty of first-degree murder, second-degree murder, or attempted especially aggravated robbery. The defendant asserts that his convictions are based solely upon various admissions that he allegedly made to Aubrey Ushera, Torina Ushery, and Brandon McKinney. It is conceivable, according to the defendant, that either Aubrey Ushery or McKinney actually committed the homicide and that their testimony was a blame-shifting attempt to avoid their own culpability for the offenses.

Reviewing courts do not second guess the decisions of jurors who, with proper instruction, are charged with sorting through a myriad of oftentimes conflicting facts and inferences

to arrive at a verdict. Reviewing courts do not handicap the various interpretations that could be drawn from the evidence at trial and do not replay and reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App.1990). Rather, appellate courts, confronted with evidence insufficiency claims, survey the evidentiary landscapes, including the direct and circumstantial contours, from the vantage point most agreeable to the prosecution. From those surveys, reviewing courts then decide whether the evidence and the inferences that flow therefrom permit any rational factfinder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979) ("Once a defendant has been found guilty, . . . the factfinder's role . . . is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."); *State v. Smith*, 24 S.W.3d 274, 278 (Tenn. 2000).

It follows that witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact, not the appellate courts. *See State v. Morris*, 24 S.W.3d 788, 795 (Tenn. 2000). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Moreover, because a conviction destroys the presumption of innocence and replaces it with a presumption of guilt, a convicted defendant bears the heavy burden of showing that the evidence was legally insufficient. *See State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant concedes as much on appeal when he writes in his brief that he "cannot argue to this Honorable Court that there is absolutely no evidence to support his conviction[s] in light of testimony regarding [his] alleged statements of admission."

We accept the concession and consider it to accurately reflect the state of the evidence and the record before us. A rational juror could reasonably accredit the testimony of the state's witnesses that the defendant left his house, gun in hand, with the preconceived plan of robbing the driver of the truck in the nearby alley. The driver tried to escape from the alley, but before he could do so, the defendant fired a single shot that struck the victim in the head and led to the victim's eventual death. This evidence suffices to support the defendant's convictions.

## II. Omitted Instructions on Lesser-Included Offenses

The defendant next insists that the jury instructions were incurably deficient with respect to the applicable lesser-included offenses for the premeditated first-degree murder charge and for the felony-murder charge. We do not have before us a verbatim transcript of the trial court's actual charge to the jury. We are relegated to reviewing a typewritten set of jury instructions that presumably was read to the jury in this case; the state, we note, does not contend otherwise.[2]

---

[2] We are at a loss to understand why the record contains only a typewritten set of instructions. The absence of a verbatim transcript of the trial court's charge is a persistent deficiency in appellate records from Shelby County.

(continued...)

The defendant was charged in this case in separate counts with premeditated, first-degree murder and felony murder. Regarding the premeditated, first-degree murder charge, the trial court instructed the jury only on second-degree murder as a lesser-included offense. No lesser-included offenses were charged for felony murder or attempted especially aggravated robbery. The jury convicted the defendant of second-degree murder, felony murder, and attempted especially aggravated robbery.

The defendant maintains that for both premeditated and felony murder, the trial court should have provided lesser-included offense instructions on second-degree murder, voluntary manslaughter, reckless homicide, and criminally negligent homicide. Although the defendant does not include the attempted especially aggravated robbery conviction in his complaint about the omission of lesser-included offense instructions, our review will also include that offense.

The state, for its part, agrees that the homicide offenses listed by the defendant are legitimate lesser-included offenses, pursuant to the test formulated in *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999), as refined and applied in subsequent decisions, *see, e.g., State v. Ely*, 48 S.W.3d 710, 721-22 (Tenn. 2001) (second-degree murder, reckless homicide, and criminally negligent homicide are lesser-included offenses of felony murder). Nonetheless, the state asserts, in the first instance, that the defendant has waived consideration of the issue by failing to include it in his new-trial motion.

## A. Waiver

We glean from the record that the defendant did not request instructions on the offenses that he now urges should have been charged as lesser-included offenses. Nor do we detect that the defendant objected to the trial court's proposed instructions. These omissions alone would not foreclose review of the issue, *see* Tenn. Code Ann. § 40-18-110 (1997) (duty to instruct "without any request on the part of the defendant") (amended 2001),[3] but the defendant also did not raise the issue in his motion for a new trial. Tennessee Rule of Appellate Procedure 3(e) specifically provides that in all jury cases, "no issue presented for review shall be predicated upon . . . jury instructions

---

[2](...continued)

We have previously criticized this practice, and in *State v. Dedonnas R. Thomas*, No. W2000-01465-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Jackson, Jan. 30, 2002), we stated, "Failure to include a transcript normally waives review of appellate issues pertaining to jury instructions because without a complete record, it is impossible for this court to discern whether the written jury instruction conforms to the instructions as read to the jury and thus, whether error actually occurred." The practice of omitting a transcript of this crucial phase of the trial, we again caution, should be discontinued.

[3] Following the trial of this case, Code section 40-18-110 was substantially rewritten by the legislature. Effective January 1, 2002, the amended statute, in pertinent part, requires a written request for a lesser-included offense instruction, such that if a "defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived." *See* Tenn. Code Ann. § 40-18-110 (Supp. 2001).

granted or refused . . . or other action committed or occurring during the trial . . . unless the same was specifically stated in a motion for a new trial." Tenn. R. App. P. 3(e). "[O]therwise," the rule concludes, "such issues will be treated as waived." *Id*. Because the defendant failed to include the issue in his motion for new trial, he has waived the issue on appeal. *See State v. Thomas Gatewood*, No. M2001-01871-CCA-R3-CD, slip op. at 9-10 (Tenn. Crim. App., Nashville, June 5, 2002) (raising lesser-included instruction error for first time on appeal resulted in waiver).

## B. Plain Error

Recognizing his predicament on appeal, the defendant urges us to conclude that the failure to instruct on the lesser-included offenses constitutes plain error. Criminal Procedure Rule 52(a) states that "an error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." Tenn. R. Crim. P. 52(a). In *State v. Adkisson*, 889 S.W.2d 626 (Tenn. Crim. App. 1994), our court set forth the following prerequisites for finding plain error:

> (a) the record must clearly establish what occurred in the trial court;
>
> (b) a clear and unequivocal rule of law must have been breached;
>
> (c) a substantial right of the accused must have been adversely affected;
>
> (d) the accused did not waive the issue for tactical reasons; and
>
> (e) consideration of the error is "necessary to do substantial justice."

*Id*. at 641-42 (footnotes omitted). The supreme court adopted this test in *State v. Smith*, 24 S.W.3d 274 (Tenn. 2000), and emphasized that all five factors must be established before plain error will be recognized. *Id*. at 282-83.

In our opinion, whether plain error exists in this case turns on consideration (e): whether review of the error is necessary to do "substantial justice." As to considerations (a) through (d), we discern no dispute. Although we are dealing with a typed set of instructions apparently provided to the jury in connection with its deliberations, the record establishes clearly enough what lesser-included offenses were and were not charged, and the parties are in agreement on this point. Considerations (b) and (c) are satisfied because a defendant has a substantial right of constitutional dimension to have the jury consider "*all* offenses supported by the evidence," *Ely*, 48 S.W.3d at 727 (emphasis in original), and when that does not occur, the failure to instruct violates a "clear and unequivocal rule of law." Last, consideration (d) is satisfied because the record does not support or

suggest that the defendant was motivated by tactical reasons to acquiesce in the truncated jury instructions on lesser-included offenses.

Whether review of the instructional error is necessary to accomplish substantial justice turns on the "justification" and harmless-error prongs of the *Burns* analysis. Once a determination is made that an offense qualifies as a lesser-included offense, the next step is to consider if the evidence at trial "justified" an instruction on the lesser offense. The *Burns* court explained this analysis in the following fashion:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

*Burns*, 6 S.W.3d at 469.

### (1)  *Burns* **Justification Analysis**

Regarding the defendant's conviction of second-degree murder on the premeditated, first-degree murder charge, the question becomes whether the evidence at trial warranted lesser-included offense instructions on voluntary manslaughter, reckless homicide, and criminally negligent homicide. The state does not specifically address either reckless homicide or criminally negligent homicide; it argues that a rational jury could not find that the defendant was acting under a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.

The "justification" inquiry has been fleshed out in decisions subsequent to *Burns*, the most recent of which is *State v. Allen*, 69 S.W.3d 181 (Tenn. 2002). From that decision, we are told that trial courts "must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense." *Id*. at 187-88. Simply stated, "[t]he evidence, not the theories of the parties, controls whether an instruction is required." *Id*.

*(a) Premeditated-murder conviction*

Under *Burns* part (a), an offense is lesser included "if all of its statutory elements are included within the statutory framework of the offense charged." *Burns*, 6 S.W.3d at 467. From *Allen*, we learn that in dealing with a *Burns* part (a) lesser-included offense, the "general rule" is that "evidence sufficient to warrant an instruction on the greater offense also will support an instruction

-8-

on a lesser offense," because "[i]n proving the greater offense the State necessarily has proven the lesser offense." *Allen,* 69 S.W.3d at 188. *Allen* dispels the previously prevailing notion that in the *Burns* part (a) situation, an instruction is not required unless reasonable minds could accept that "only" the lesser offense occurred. *Id.* In other words, "the *Burns* analysis does not preclude finding that the same evidence supports an instruction on both the greater offense and the lesser offense." *Id.*

Second-degree murder, reckless homicide, and criminally negligent homicide are *Burns* part (a) lesser-included offenses of premeditated murder. *See State v. Rush*, 50 S.W.3d 424, 430-31 (Tenn. 2001) ("Because lesser levels of the statutory hierarchy of mental states (intentional, knowing, reckless, and criminally negligent) are included within the greater levels pursuant to Tenn. Code Ann. § 39-11-301(a)(2) (2000), an intent element which differs from the intent element of the charged offense only by one of these lower-hierarchy mental states is not actually treated as a differing element."). Accordingly, pursuant to *Allen*, an instruction on these offenses was justified and should have been given in this case.

As for voluntary manslaughter, in *State v. Dominy*, 6 S.W.3d 472 (Tenn. 1999), the supreme court referred in a footnote to the "passion" language of voluntary manslaughter as reflecting a less culpable mental state than required for first- or second-degree murder. *Id.* at 477 n.9. Two years later, in another footnote passage in *State v. Rush*, the court then stated, "[*Burns*] [p]art (b)(1) is necessary, however, when an offense has a differing mental state element which does not neatly fit within the hierarchy (e.g., voluntary manslaughter as a lesser-included offense of first degree murder)." *Rush*, 50 S.W.3d at 430 n.7. *Burns* part (b)(1) embraces a lesser-included offense that "fail[s] to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing (1) a different mental state indicating a lesser kind of culpability." *Burns*, 6 S.W.3d at 467.[4] Because voluntary manslaughter is not a *Burns* part (a) lesser offense, it does not fall within *Allen*'s "general" justification rule that an instruction should be given.

Here, there is scant evidence about the circumstances immediately preceding the discharge of the firearm into the back window of the victim's truck. Brandon McKinney testified at trial that he overheard other people in the house talking about the shooting in the defendant's presence. What McKinney heard was that the defendant "was trying to rob the man, and that the man said 'F-you,' or something like that. And when he said that, [the victim] tried to back out the driveway – or pull out the driveway, that [the defendant] just shot him." A similar account was given by Aubrey Ushera at trial. He related that the defendant told him that "the guy seen him coming, and the guy backed up" whereupon the defendant "got in front [sic] the truck and shot, and he came – ran back down to the house."

---

[4] In *Allen*, the court stated that the "general" justification rule for part (a) lesser-included offenses does not extend to part (c) lesser offenses. The court did not mention part (b) offenses, but no reason presents itself why part (b) and (c) lesser-included offenses should be analyzed differently. *See State v. William Binkley*, No. M2001-00404-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App., Nashville, April 5, 2002) (no reason to treat part (b) and (c) offenses differently; as with part (c) lesser offenses, proof of the greater offense will not necessarily prove the lesser offense under part (b)).

Without judging the credibility of this evidence, as *Burns* cautions us not to do, we conclude that it is insufficient to justify an instruction on voluntary manslaughter. This evidence simply does not raise an issue that the defendant was acting under a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner. Absent other evidence, however implausible, reasonable minds could not find that the defendant committed voluntary manslaughter by being adequately provoked into a passionate act. *See State v. William Binkley*; No. M2001-00404-CCA-R3-CD, slip op. at 10-11 (Tenn. Crim. App., Nashville, Aug. 5, 2002); *State v. Robert Lee Pattee*, No. M2000-00257-CCA-R3-CD, slip op. at 10-11 (Tenn. Crim. App., Nashville, May 3, 2001), *perm. app. denied* (Tenn. 2001). Thus the evidence does not warrant an instruction on the lesser-included offense of voluntary manslaughter.

In summary, we conclude that as to the premeditated-murder charge, the evidence at trial "justified" lesser-included offense instructions not limited to second-degree murder, which was given, but also for the *Burns* (a) lesser-included offenses of reckless homicide and criminally negligent homicide, which were not given.

### (b) Felony-murder conviction

Continuing with the "justification" analysis, we now turn to the felony-murder charge for which no lesser-included offense instructions were given. In *State v. Ely*, 48 S.W.3d 710, 722 (Tenn. 2001), the supreme court ruled that second-degree murder, reckless homicide, and criminally negligent homicide are lesser-included offenses of felony murder under part (b) of the *Burns* test.

Although *Allen*'s "general" justification rule that an instruction should be given does not apply in this context, we nevertheless regard the evidence as supporting instructions on these lesser offenses. We know, based on the jury verdict on the first count of the indictment, that the evidence was such as to lead a reasonable jury to conclude that the defendant committed second-degree murder. For reckless and criminally negligent homicide, we note that the mental states for these offenses are encompassed with the definition of "knowing," Tenn. Code Ann. § 39-11-301(a)(2) (1997), which is the requisite mens rea for the most common form of second-degree murder, *id*. § 39-13-210(a)(1) (1997) (a "knowing killing of another"). From the evidence in this case, the jury may have reasonably concluded that the defendant's actions in shooting once toward the victim's truck was criminally negligent or reckless.

In summary, we conclude that as to the felony-murder charge, a conviction for any of the lesser-include offenses of second-degree murder, reckless homicide, or criminally negligent homicide was supported by the evidence. The evidence justified instructions on these lesser offenses, and the failure to instruct was error.

### (c) Attempted especially aggravated robbery conviction

As with the felony-murder charge, the trial court gave no instructions on lesser-included offenses for the charged crime of attempted especially aggravated robbery. Robbery is

established by proof of the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401 (1997). Use of a deadly weapon *or* serious bodily injury are the features that distinguish aggravated robbery from robbery. *Id*. § 39-13-402 (1997). Use of a deadly weapon *and* serious bodily injury then distinguish especially aggravated robbery from aggravated robbery. *Id*. § 39-13-403 (1997). Aggravated robbery and robbery are classic *Burns* part (a) lesser-included offenses of especially aggravated robbery.

"Error in omitting a lesser-included offense instruction is not negated merely because the evidence also is sufficient to convict on the greater offense." *Allen*, 69 S.W.3d at 187. A "basis for acquittal on the greater offense" need not be shown before an instruction on the lesser offense is required. *Id*. In *Allen*, the defendant was indicted for aggravated robbery. *Id*. at 184. He was convicted of the lesser-included offense of robbery. *Id*. On appeal, he complained that facilitation of robbery should have been charged as a lesser offense of aggravated robbery. *Id*. at 187. The court rejected the proposition that no reasonable juror could return a verdict for facilitation of robbery because evidence of the use of a deadly weapon was "uncontroverted." *Id*. at 189. The court, quoting from *Burns*, emphasized that "the jury, not the judge, performs the function of fact-finder." *Id*. To underscore its point, the court observed, "In fact the jury in this case rejected the proof of the use of a deadly weapon in convicting the defendant of robbery rather than the charged offense of aggravated robbery." *Id*.

From *Allen* we conclude that the trial court in this case also erred in failing to instruct the jury, in connection with attempted especially aggravated robbery, on the lesser offenses of attempted aggravated robbery and attempted robbery.

### (2) *Burns* Harmless Error Analysis

Our next undertaking is to determine whether the failure to instruct on the lesser-included offenses was harmless. As the court observed in *Thomas Gatewood*, "If the error in not instructing . . . was harmless, it would not appear, as a practical matter, that justice would require our reviewing it. Thus, as to [plain error] consideration (e), we will ascertain the effect of the error." *Thomas Gatewood*, slip op. at 10.

The most sure-footed context for analyzing harmless error occurs when the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser-included offenses. In that context, there is general agreement that the constitutional error may be declared harmless. *See Allen*, 69 S.W.3d at 190, 191; *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998), *modified by State v. Ely*, 48 S.W.3d 710 (Tenn. 2001). We are not, however, confronted with that situation. For the premeditated-murder charge, there was no intervening lesser offense that the jury passed over in favor of a greater offense. The jury was instructed only on second-degree murder as a lesser-included offense. For the felony-murder and attempted especially aggravated robbery charges, the jury had no option to find the defendant guilty of a lesser offense because none was charged.

*(a) Felony-murder conviction*

We conclude that the trial court's failure to charge applicable lesser-included offenses to the charged offense of felony murder was not harmless beyond a reasonable doubt. The jury in this case already had determined with regard to the premeditated-murder charge that the defendant was guilty of the lesser offense of second-degree murder. Although consistency in verdicts for multiple count indictments is not required, *e.g., Wiggins v. State*, 498 S.W.2d 92, 93-94 (Tenn. 1973); *State v. Gennoe*, 851 S.W.2d 833, 836 (Tenn. Crim. App. 1992), we cannot say with the slightest degree of confidence that had the jury also been instructed on any or all of the lesser-included offenses, it would have eschewed all of the lesser-included offenses and convicted the defendant of felony murder. The same conclusion has been reached in other decisions with similar fact patterns. *See Ely*, 48 S.W.3d at 727 (jury for defendant Ely given no option to convict of a lesser offense than felony murder although evidence sufficient to support conviction on a lesser; cannot conclude that failure to instruct was harmless beyond a reasonable doubt); *State v. Daniel Wade Wilson*, No. E2000-01885-CCA-R3-CD, slip op. at 15 (Tenn. Crim. App., Knoxville, Aug. 2, 2001), *perm. app. denied* (Tenn. 2002) (jury not given option to find lesser offense than felony murder in second count; on first count charging premeditated murder, jury convicted defendant of second-degree murder; failure to charge second-degree murder as a lesser to felony murder was not harmless error).

*(b) Premeditated-murder conviction*

We also conclude that the trial court's failure to charge applicable lesser-included offenses, other than second-degree murder, in connection with the premeditated murder count was not harmless beyond a reasonable doubt. We are bolstered in our conclusion by the harmless error discussion in *Allen* and by the determination in *Allen* that the error was not harmless.

In this case, the defendant's intent was clearly questionable and subject to dispute, as evidenced by the jury's rejection of first-degree, premeditated murder. In light of the jury's verdict and the resulting uncertainty, we have a substantial and reasonable concern that the jury's verdict may have changed if it had been presented the opportunity to consider other lesser offenses.

*(c) Attempted especially aggravated robbery conviction*

Finally, we are of the opinion that the trial court's failure to charge applicable lesser-included offenses to attempted especially aggravated robbery was harmless beyond a reasonable doubt. Presuming the defendant to be the shooter, the evidence was undisputed that the victim suffered serious bodily injury – death – and that the defendant had a deadly weapon, namely a handgun. At this juncture, the inquiry switches. When, as in this case, the elements distinguishing the greater, charged offense are "uncontested and supported by overwhelming and uncontroverted evidence," the failure to instruct may be harmless error. *Allen*, 69 S.W.3d at 190 (applying the reasoning of *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827 (1999), to the improper omission of a lesser-included offense). We think such a situation exists in this case.

**(C) Application of Plain Error Rule**

For the reasons we have detailed above, it is our determination that to do "substantial justice," within the meaning of Criminal Procedure Rule 52(b) and *Adkisson* consideration (e), we must hold that it was plain error for the jurors not to have been instructed on the applicable lesser-included offenses for the premeditated and felony-murder charges. We, therefore, reverse the defendant's convictions for second-degree murder and for felony murder. On remand for a new trial, the defendant may be retried for felony murder and its applicable lesser offenses and for second-degree murder and its applicable lesser offenses. *See State v. Rush*, 50 S.W.3d 424, 432 (Tenn. 2001). We hold there is no plain error in the failure to instruct on the lesser-included offenses of attempted especially aggravated robbery.

**III. Consecutive Sentencing**

Because further appellate review may follow our decision, *see State v. Pendergrass*, 13 S.W.3d 389, 395 (Tenn. Crim. App. 1999), *perm. app. denied* (Tenn. 2000), we will consider the defendant's final issue that the trial court should not have ordered his ten-year sentence for attempted especially aggravated robbery to be served consecutively to his sentence of life without the possibility of parole. The trial court found that the defendant was a "dangerous offender," a finding which the defendant disputes. The defendant maintains that although he was convicted of inherently dangerous crimes, there were no other attending aggravating circumstances that would warrant consecutive sentencing.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When a defendant is convicted of one or more offenses, the trial court must determine if the sentences shall be served concurrently or consecutively. Tenn. Code Ann. § 40-35-115 (1997). Consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the following criteria exist:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist . . . ;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor . . . ;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b)(1)-(7) (1997). In addition to these criteria, consecutive sentencing is subject to the general sentencing principles providing that the length of a sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." *Id*. §§ 40-35-102(1), -103(2) (1997); *see State v. Imfeld*, 70 S.W.3d 689, 708 (Tenn. 2002). Moreover, in *State v. Wilkerson*, 905 S.W.2d 933, 937-38 (Tenn. 1995), the supreme court articulated two additional requirements for consecutive sentencing under the dangerous offender category; the trial court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. *See Imfeld*, 70 S.W.3d at 708 (need for the additional *Wilkerson* findings arises in part because "dangerous offender" category "is the most subjective and hardest to apply").

At the conclusion of the sentencing hearing in this case, the trial court ordered that the defendant's especially aggravated robbery sentence be served consecutively to his life sentence. The trial court's findings appear in the record as follows:

I do find that Mr. Wilson is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which risk to human life is high. The manner in which he, according to the proof, talked about going out to rob the dope man and then almost cavalierly went back in after he shot the man and sort of orchestrated the whole cover-up and then walked off to go to some friend's funeral suggests to me that he has little or no regard for human life and no hesitation about committing a crime involving risk to human life.

-14-

As to whether or not a consecutive sentence would reasonably relate to the severity of the offenses committed it's hard to see how the severity of the offenses committed could be any greater than a first degree murder under these circumstances, and consecutive sentences being necessary in order to protect the public from further serous criminal conduct by the Defendant I think the jury through its verdict and I concur in what the jury's actions were, were concerned that the public be protected from Mr. Wilson based on his conduct during these events.

And accordingly I think the consecutive sentencing is in order. I'll sentence Mr. Wilson to ten years as a Range I offender for this offense consecutive to his life without parole sentence that he had already received.

Here, the trial court found that the *Wilkerson* factors existed and that the defendant qualified as a dangerous offender. The trial court further made factual findings relative to the defendant's demeanor, which to the trial court indicated little or no regard for human life and no hesitation about committing a crime involving a high risk to human life. In particular, the trial court emphasized the defendant's casual, nonchalant actions after the shooting. We will not second guess the trial court's assessment of the defendant's demeanor, and we are of the opinion that the record supports the imposition of consecutive sentencing.

## IV. Conclusion

Based on the reversible error that occurred in this case relative to the failure to charge lesser-included offenses, we reverse the defendant's second-degree murder and felony-murder convictions and remand the case for a new trial on both charges. We affirm the defendant's attempted especially aggravated robbery conviction. We affirm the consecutive sentencing order.

_____
JAMES CURWOOD WITT, JR., JUDGE

-15-