IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 14, 2001 Session

## STATE OF TENNESSEE v. ERNEST EDWARD WILSON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-D-2474     J. Randall Wyatt, Jr., Judge**

---

**No. M2000-01997-CCA-R3-CD - Filed October 17, 2001**

---

A Davidson County Grand Jury indicted the defendant for premeditated first degree murder. The defendant was convicted of the lesser-included offense of second degree murder and sentenced to 24 years as a violent offender. In this appeal, the defendant contends: (1) the evidence was insufficient to sustain his conviction; (2) the trial court erroneously neglected to charge the jury on the lesser-included offenses of reckless homicide and criminally negligent homicide; and (3) the defendant's sentence is excessive. After a thorough review of the record, we conclude the failure to charge the lesser-included offenses of reckless homicide and criminally negligent homicide was, at most, harmless error. The defendant's remaining allegations of error are without merit; thus, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court. JAMES CURWOOD WITT, JR., J., filed a concurring and dissenting opinion.   DAVID H. WELLES, J., filed a dissenting opinion.

W. Casey Reed (on appeal) and Monte D. Watkins (at trial), Nashville, Tennessee, for the appellant, Ernest Edward Wilson.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Dan Hamm and Philip H. Wehby, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL OVERVIEW

On the morning of February 25, 1998, as the defendant and his brother drove to a tire repair shop, the defendant saw the victim, a friend with whom he had used drugs the evening before, walking through Hadley Park. The defendant demanded to get out of the vehicle, took his pistol, and

ran toward the victim. The defendant fired three shots, one of which struck the victim in the back. The victim ran a short distance, dropped an opened pocket knife, collapsed, and subsequently died. The defendant returned to the vehicle, and he and his brother fled from the scene.

## TRIAL TESTIMONY

Calvin Jones testified that he stopped at a traffic light on February 25th, saw two men in the park, and heard gunfire. The victim then attempted to flee and the shooter continued firing. The shooter ran to a vehicle and fled the scene. The victim ran into the street and collapsed near Jones's vehicle. Jones phoned 911 on his cellular phone and gave officers a general description of the fleeing vehicle. Officers subsequently brought the defendant and his brother back to the scene, where Jones identified the defendant as the shooter.

Paul Bruckert testified he noticed two males arguing in the park. One of them ran and eventually fell on the street approximately 30 feet from Bruckert. Bruckert never saw a gun, but he saw the victim drop an opened pocket knife prior to falling.

Officer David Anthony Miller testified he was dispatched to the shooting. While in route, he noticed a vehicle matching the description of the shooter's vehicle. Accordingly, Miller and a following police cruiser pursued the vehicle for approximately four blocks. When the vehicle pulled over, the defendant fled on foot. Officer Miller chased the defendant on foot and assisted in subduing him.

David Wilson, the defendant's brother, testified the defendant came to his residence at approximately 6:30 a.m. on February 25th and informed him his vehicle had a flat tire. They drove the vehicle toward the tire repair shop, and the defendant mentioned something about "clothes and money [being taken]." When they reached the Hadley Park area, the defendant demanded, "Let me out. Let me out." The defendant then jumped out of the vehicle, brandished a gun, and ran toward a person walking in the park. That person "charged" the defendant, and the defendant backed up. Wilson then heard a gunshot. After the shot, the victim turned from the defendant and ran away. Wilson stated he heard one or two more shots, and the defendant returned to the vehicle. They then fled the scene. On cross-examination, Wilson stated that the victim was his prior house guest, who stole a dress belonging to the defendant's wife. Wilson further stated he had banished the victim from his residence.

Dr. John Gerber, a pathologist, testified the victim died of a single gunshot wound to his left upper back. Dr. Gerber stated the victim had ingested cocaine, but he could not determine its effect on the victim.

The defendant testified he and the victim had used drugs "all day, everyday," for four or five days prior to the incident. On the morning of the shooting, he let the victim drive his brother's vehicle, and the victim fell asleep at the wheel. The vehicle jumped the curb, causing the tire to go

flat. When the victim exited the vehicle, the defendant locked the doors and drove the vehicle away. The defendant stated the victim, with his pocket knife drawn, pursued the vehicle on foot.

The defendant further testified he then drove to his brother's residence. He and his brother retrieved a spare tire and drove toward a tire repair shop. When they drove past Hadley Park, the defendant saw the victim walking in the park. The defendant exited the vehicle with his gun at his side and walked toward the victim to instruct him to stay away from his brother's residence. As he approached the victim, the defendant noticed the victim had a knife. The victim came toward him, brandishing the knife, and the defendant fired a warning shot "down at the side." The victim failed to heed the warning, turned sideways, and again came at the defendant. The defendant discharged his weapon again. The victim turned and fled. After the defendant began walking to the vehicle, the victim came toward the defendant again, and the defendant again "shot at him." The defendant then ran to the vehicle and fled the scene.

The defendant further testified he had known the victim for 20 years and "had no hard feelings about him." He conceded, however, that he "had some words" with the victim the night prior to the shooting concerning the victim's "stealing [his] dope," to which the victim stated, "don't make me stick you." The defendant stated the victim "always talked about sticking people and how he has stuck people." He then explained that he and the victim were often angry with each other. The defendant described the shooting as one warning shot, one shot "close to him," and a third shot.

Gary Trenton Marlow testified the victim stabbed him nine times on January 9, 1998. The defendant stated he was aware of this stabbing prior to shooting the victim.

The trial court charged the jury as to first degree murder and the lesser offenses of second degree murder and voluntary manslaughter. The trial court also instructed the jury on the law of self-defense. The jury convicted the defendant of second degree murder.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence is insufficient to support his conviction. We disagree.

### A. Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App.1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Id.* In State v. Grace, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

## B. Analysis

In order to convict the defendant of second degree murder, the state must prove the defendant "knowing[ly]" killed the victim. Tenn. Code Ann. § 39-13-210(a)(1). In light of the evidence, the state was also required to prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Besler, 945 S.W.2d 776, 782 (Tenn. Crim. App. 1996).

The defendant and the victim had been angry with each other prior to the shooting. When the defendant saw the victim walking in the park, the defendant ordered his brother to stop the vehicle, grabbed his gun, placed the gun at his side, and initiated a confrontation with the victim. The defendant fired three shots with one bullet striking the victim in his back. There was testimony indicating the defendant continued to fire when the victim was fleeing. A rational jury could conclude the victim was shot while he was trying to flee. Although the defendant testified that he acted in self-defense, the jury was free to conclude otherwise, especially since the victim was shot in the back. *See* State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997) (holding self-defense is a jury question).

Viewing the evidence in a light most favorable to the state, the evidence is sufficient for a rational jury to find the defendant knowingly killed the victim, and the defendant was not acting in self-defense.

## II. LESSER-INCLUDED OFFENSES

The defendant contends that the trial court erroneously failed to instruct the jury on reckless homicide and criminally negligent homicide as lesser-included offenses of first degree murder. We agree that reckless homicide and criminally negligent homicide are lesser-included offenses of first degree murder. Even if they should have been charged, however, we conclude the failure to charge them was harmless beyond a reasonable doubt.

In State v. Williams, 977 S.W.2d 101 (Tenn. 1998), the trial court instructed the jury on first degree murder and second degree murder, but not on voluntary manslaughter. The jury convicted the defendant of first degree murder. Our supreme court concluded that "by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, the jury necessarily rejected all other lesser offenses," including voluntary manslaughter. *Id.* at 106.

Although the defendant in the case at bar was convicted of second degree murder and not the "highest offense" charged of first degree murder, we still believe the Williams rationale applies. Since the jury found the defendant guilty of second degree murder and not voluntary manslaughter, it necessarily rejected all other lesser offenses below second degree murder, including reckless homicide and criminally negligent homicide.

Our view is reinforced by the language used in the recent case of State v. Bowles, ___ S.W.3d ___ (Tenn. 2001), which found harmless error in the failure to charge sexual battery as a lesser-included offense of aggravated rape, for which the defendant was convicted. The court noted the trial court charged the lesser-included offenses of rape and aggravated sexual battery, and "[e]ither of these lesser-included offenses would be considered more serious than sexual battery. . . . [I]t seems highly improbable that it would have chosen to [find defendant guilty of sexual battery] when it had declined to consider other, more serious lesser-included offenses." *Id.* at ___.

Here, the jury convicted the defendant of second degree murder and declined to consider voluntary manslaughter, which is a "more serious" offense than reckless homicide and criminally negligent homicide. For this reason we conclude beyond a reasonable doubt that the conviction for second degree murder and the disinclination of the jury to consider voluntary manslaughter indicate that the jury would not have convicted the defendant of the less serious offenses of reckless homicide or criminally negligent homicide. If the trial court erred in not charging these lesser offenses, it was harmless.

We also find harmless error for another reason. Prior to final argument, the trial court advised both counsel that it would charge first degree murder, second degree murder and voluntary manslaughter. The defendant never objected to the jury charge and never requested that reckless homicide and criminally negligent homicide be charged, although we recognize this does not foreclose appellate review. S*ee* State v. Brooks 909 S.W.2d 854, 859 (Tenn. Crim. App. 1995) (holding failure to charge lesser-included offenses is subject to plain error review); *see also* Tenn. R. Crim. P. 30(b). Furthermore, the trial court is required to charge lesser-included offenses without

a request from the defendant. Tenn. Code Ann. § 40-18-110(a)(1997). The defense theory was set forth in defense counsel's final argument as follows:

> Suppose they were arguing. Suppose Mr. Wilson was mad. What is that, heat of passion? At the worst, it's Voluntary Manslaughter. But this is a case of self-defense.

Thus, the defense theory was self-defense or, at most, voluntary manslaughter. Self-defense and voluntary manslaughter were fully addressed in the jury charge. It was <u>not</u> the defendant's theory that the homicide resulted from recklessness or criminal negligence. Defendant is now asking this court, in hindsight, to give the jury options not envisioned by his defense at trial. We conclude the state has shown beyond a reasonable doubt that, in light of the evidence and defense theory at trial, the jury would not have convicted the defendant of reckless homicide or criminally negligent homicide even if they had been charged.

This issue is without merit.

### III. SENTENCING

The defendant contends that his sentence is excessive. We respectfully disagree.

### A. Standard of Review

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. <u>State v. Poole</u>, 945 S.W.2d 93, 96 (Tenn. 1997).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence for a Class A felony shall be the midpoint of the applicable range. The applicable range for the Class A felony of second degree murder in Range I is 15 to 25 years; thus, the presumptive sentence is 20 years. *See* Tenn. Code Ann. § 40-35-112(a)(1). No particular weight for each enhancement or mitigating factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. <u>State v. Moss</u>, 727 S.W.2d 229, 238 (Tenn. 1986); <u>State v. Kelley</u>, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

**B. Analysis**

The defendant alleges our review of sentencing is without a presumption of correctness because the trial court failed to state the mitigating factors on the record, as required by Tenn. Code Ann. § 40-35-210(f) (requiring the trial court to "place on the record either orally or in writing what enhancement or mitigating factors it found").

The day prior to the sentencing hearing, the defendant filed notice of the following mitigating factors:

(1) The defendant admitted to killing the victim but believed that he acted in self-defense;
(2) The defendant acted under strong provocation;
(3) The defendant, although found guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct; and
(4) The defendant was a drug addict and lacked the substantial capacity to commit the offense.

*See* Tenn. Code Ann. § 40-35-113(2), (11), (13).

At the sentencing hearing, the trial court applied enhancement factor one (the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range) because the defendant had numerous prior misdemeanor convictions. *See* Tenn. Code Ann. § 40-35-114(1). The trial court also applied enhancement factor nine (the defendant employed a firearm during the commission of the offense). *See* Tenn. Code Ann. § 40-35-114(9). These two enhancement factors were properly applied.

As for the proffered mitigating factors, the trial court specifically rejected the contention that the defendant acted under strong provocation. *See* Tenn. Code Ann. § 40-35-113(2). The trial court accredited the jury's finding that the defendant did not act in self-defense, thus rejecting the defendant's contention that this was a mitigating factor. *See* Tenn. Code Ann. § 40-35-113(3). The trial court properly rejected these mitigating factors.

Although the trial court did not specifically reject mitigating factor eleven, (unlikely a sustained intent to violate the law motivated his conduct), the trial court implicitly and properly rejected this factor. *See* Tenn. Code Ann. § 40-35-113(11). The defendant further argues mitigation is appropriate because "[he] was a drug addict and lacked substantial capacity to commit the offense." However, the defendant's voluntary drug use does not qualify as a mitigating factor. *See* Tenn. Code Ann. § 40-35-113(8).

After a consideration of the applicable enhancement factors and finding no applicable mitigating factors, we conclude the defendant's 24-year sentence was proper.

## CONCLUSION

Based on the foregoing, we conclude (1) the evidence is sufficient to sustain the conviction; (2) the trial court's failure to charge the jury on the lesser-included offenses of reckless homicide and criminally negligent homicide was, at most, harmless error; and (3) the defendant's sentence is appropriate. The judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE