# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 3, 2003

## STATE OF TENNESSEE v. TERRANCE G. MOTLEY

**Appeal from the Criminal Court for Shelby County**
**Nos. 00-01715, 16     Joseph B. Dailey, Judge**

---

**No. W2002-02079-CCA-R3-CD  - Filed November 14, 2003**

---

The Appellant, Terrance G. Motley, was convicted by a Shelby County jury of criminal attempt to commit first degree murder and being a felon in possession of a firearm.  He was sentenced to an effective sentence of forty-four years in the Department of Correction.  At trial, Motley waived his right to be represented by counsel and proceeded *pro se*.  On appeal, Motley raises three issues for our review: (1) whether the trial court denied him his constitutional right to the assistance of counsel by failing to ascertain if his waiver was knowingly and intelligently given; (2) whether the trial court erred in failing to instruct the jury on the lesser included offense of criminal attempt to commit voluntary manslaughter; and (3) whether the evidence was sufficient to support the jury's verdict. After a review of the record, we conclude that issues (1) and (3) are without merit.  With regard to issue (2), we conclude that failure to give an instruction on the lesser included offense of attempted voluntary manslaughter was error, but harmless.  Accordingly, the judgments of conviction are affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined; JOSEPH M. TIPTON, J., concurring.

Robert Wilson Jones, Shelby County Public Defender; Tony N. Brayton, Assistant Public Defender, Memphis, Tennessee, on appeal, for the Appellant, Terrance G. Motley.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Thomas E. Williams, III, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jennifer Nichols and Amy Weirich, Assistant District Attorneys General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background

On April 2, 1998, twenty-nine-year-old Verles Morris was riding his bicycle to a grocery store in his Memphis neighborhood, when the Appellant, speeding down the street in a burgundy Chevrolet sedan, nearly hit him. Upset by the Appellant's action, Morris proceeded up the street to where the Appellant had stopped his vehicle. The Appellant was sitting in the car with a female identified only as Tara. Morris approached the car and knocked on the Appellant's window. The Appellant, after noticing that some of Morris' friends had quickly gathered, tried to hand Morris his jewelry. Morris explained that he had no intention of robbing the Appellant, that he only wanted him to slow down because there were children playing in the street. After this brief discussion, the two men shook hands. With their differences seemingly resolved, Morris rode away on his bike.

Seconds later, the Appellant, now alone in the car, backed onto the street and accelerated towards Morris. The Appellant slowed as he neared Morris, yelled a slur to get his attention, aimed his handgun at Morris, and "unloaded." Morris, shot first in the hip, was knocked from the bike and fell to the ground. Using the bike as a shield, he attempted to avoid further injury. However, before the Appellant sped away, Morris was shot three more times, resulting in gunshot wounds to the ankle, stomach, and chest. The case remained unsolved for over a year until Morris coincidentally saw the Appellant again at the Shelby County Courthouse in November of 1999. Morris ascertained the Appellant's name from the docket sheet and contacted the police. Morris was subsequently able to identify the Appellant from a photo line-up. Tony Fowler witnessed the shooting and identified the Appellant as the shooter. In addition, police learned that the Appellant's mother owned a burgundy Chevrolet at the time of the shooting, which the Appellant often drove.

After identifying the Appellant, Morris was approached on the street by the Appellant's brother Vernon. Vernon Motley requested that Morris accompany him to the office of Howard Wagerman, the Appellant's retained attorney. While Morris went into the office, Vernon and another man remained in the waiting area in order to take Morris home. Morris gave a notarized statement that the Appellant was not the person who had shot him. Morris testified at trial that this statement was a lie and that he had only given the statement because of his fear of Vernon Motley.

On February 22, 2000, a Shelby County grand jury returned an indictment against the Appellant charging him with attempted first degree murder and possession of a handgun by a convicted felon. The Appellant's retained private counsel filed a motion to withdraw as counsel on July 23, 2001, based upon the possibility that he could be called as a witness to testify regarding his involvement with the Appellant's brother. The trial court offered the Appellant the appointment of a public defender. The Appellant refused, stating that he wanted his retained counsel to continue in his representation rather than testify as a witness. The trial court denied this request and informed the Appellant that he could accept representation by the public defender's office, retain new counsel, or proceed *pro se*. After a hearing on this issue, the Appellant executed a written waiver of his right to counsel, which was accepted by the trial court.

A jury found the Appellant guilty as charged on both counts on March 27, 2002. The trial court subsequently sentenced the Appellant as a Range II offender to an effective sentence of forty-four years in the Department of Correction.[1] The Appellant filed a motion for new trial, which the trial court overruled on July 26, 2002. An order was subsequently entered appointing the Shelby County Public Defender's Office to represent the Appellant on appeal.

**Analysis**

### I. Right to the Assistance of Counsel

As his first issue, the Appellant argues that he was denied his constitutional right to the assistance of counsel. Specifically, he contends that the trial court failed to adequately ascertain whether the waiver of his right to counsel was made knowingly and intelligently.

The right to the assistance of counsel in the preparation and presentation of a defense to a criminal charge is grounded in both the Tennessee and United States Constitutions. *See* U.S. CONST. amend. VI; TENN. CONST. art. I, § 9. There also exists an alternative right, the right to self-representation, which is necessarily implied by the structure of the Sixth Amendment. *Faretta v. California*, 422 U.S. 806, 814, 95 S. Ct. 2525, 2530 (1975); *State v. Northington*, 667 S.W.2d 57, 60 (Tenn. 1984). However, the exercise of the right to self-representation depends in large part upon a knowing and intelligent waiver of the right to counsel. *Northington*, 667 S.W.2d at 60. Consequently, in cases where the accused states a desire to represent himself or herself at trial, the trial court has a duty to first determine whether the waiver is knowing and intelligent. In *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S. Ct. 1019, 1023 (1938), the United State Supreme Court placed "the serious and weighty responsibility . . . of determining whether there is an intelligent and competent waiver" directly upon the trial judge. More specific guidelines were subsequently established in *Von Moltke v. Gillies*, 332 U.S. 708, 723-24, 68 S. Ct. 316, 323 (1948), wherein the Supreme Court held that:

> [A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a

---

[1] The forty-four-year sentence consisted of a forty-year sentence for the attempted first degree murder conviction and a four-year sentence for the felony firearm conviction. In addition, the sentences were ordered to be served consecutively to a federal sentence for firearm convictions.

penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

Similarly, Rule 44(a) of the Tennessee Rules of Criminal Procedure provides:

> Every indigent defendant shall be entitled to have counsel assigned in all matters necessary to the defense and at every stage of the proceedings, unless the defendant executes a written waiver. Before accepting such waiver the court shall first advise the accused in open court of the right to the aid of counsel at every stage of the proceedings. The court shall, at the same time, determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience and conduct of the accused and such other matters as the court may deem appropriate.

Clearly, the trial court is obligated to conduct a fairly intensive investigation into the accused's ability to represent himself when the issue is raised. The Appellant argues that the trial court failed to conduct a diligent and penetrating inquiry as required by *Von Moltke*. Specifically, he argues that the court failed to conduct any inquiry into five of the six factors listed: (1) whether the Appellant had an apprehension of the nature of the charges against him; (2) whether the Appellant understood statutory offenses included within the charged offenses; (3) whether the Appellant understood the range of punishment of the charged offense or any lesser included offenses; (4) whether the Appellant understood or was aware of any circumstances which might be offered in mitigation to the charged offense or any lesser included offenses; and (5) whether the Appellant understood the possible defenses to the charged offenses or any lesser included offenses.

The record before us demonstrates that the trial court conducted a thorough examination of the Appellant before allowing him to proceed *pro se*. The following colloquy occurred at the hearing:

| THE COURT: | How far did you go in school? |
|---|---|
| THE DEFENDANT: | I got my GED. |
| THE COURT: | Okay. Have you even been to college or law school? |
| THE DEFENDANT: | No, Your Honor. |
| THE COURT: | Have you ever sat through an actual trial as opposed to a guilty plea? |
| THE DEFENDANT: | No, Your Honor. |

-4-

THE COURT: Do you know how to select a jury or examine a witness or what the rules of procedure and rules of evidence might be in the state of Tennessee?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You do. Okay. And do you feel confident that you can represent yourself in a criminal trial where the stakes are so high? This is an A felony you're talking about here with potential great exposure of prison time. . . . Do you feel confident that you can represent yourself in an A felony in which your exposure is so great?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you obviously have a right to an attorney - you hired Mr. Wagerman, and I've appointed Ms. Kent to represent you. Is it your desire to give up your right to an attorney and proceed representing yourself?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that you would be held to the same standard as an attorney would be?

THE DEFENDANT: Yes, Your Honor.

THE COURT: If you get in a bind and don't know how to object or how to present proof or do something that is beyond what the rules allow, you'll be held to the same standards as an attorney; you won't be given any special preferential

-5-

THE DEFENDANT:      treatment because you're representing yourself. You understand that?

THE DEFENDANT:      Yes, Your Honor.

THE COURT:      And you're still prepared and desirous of going forward and representing yourself in this matter?

THE DEFENDANT:      Yes, Your Honor.

THE COURT:      And do you know - do you understand that in my opinion, you're making a mistake doing this? In my opinion, you would be much better off with an attorney representing you?

THE DEFENDANT:      Yes, Your Honor. . . .

THE COURT:      You better review the rules of evidence-

THE DEFENDANT:      Your Honor, I'm ready for my trial today, as scheduled, like it was scheduled yesterday. I'm ready to stay on my trial today.

THE COURT:      . . . If you're going to represent yourself, you're going to have time. Whether you use the time or not, I'm going to give you sufficient time to review the rules of evidence, rules of procedure, what the proof is in the case, and review how to select the jury, things of that sort, so that when you do go to trial, representing yourself on an A felony, you have had some opportunity to prepare yourself. . . .

THE DEFENDANT:      Your Honor, I'm more familiar with my case than anyone, . . .

THE COURT: Well, you may well be from a factual standpoint, but from a legal preparation standpoint, you're not a lawyer, you've never been to law school, you've never been to college, and you've never sat through a trial from start to finish, and I'm not going to allow the case to go to trial with you representing yourself, today, this being the first day that I've allowed you to represent yourself without having time to adequately prepare yourself and equip yourself with the knowledge to represent yourself in a serious case. . . .

From a factual standpoint, you may be right. You may be as familiar with this as anyone else. But from a legal preparation standpoint, I don't believe you are ready, and I'm not going to allow you to go forward with the trial today. . . .

THE DEFENDANT: Your Honor, I don't have any witnesses. That's why I really am ready. My whole defense is based on that the prosecutor has witnesses and all their statements are conflicting. I would base my whole defense on whether or not the jury decides who they want to believe. I repeatedly let Mr. Wagerman know this was my grounds of defense; that was going to let the jury decide which side they wanted to believe.

Furthermore, I feel I am ready to represent myself. I have been incarcerated going on twenty-one months, and I have studied the law. I have not just studied the facts of my case. I have not just studied the discovery evidence. I just got my indictments yesterday where I've not

-7-

studied. The factual issues of my case, I've been studying. Tennessee Rules of Evidence, Tennessee Rules of Criminal Procedures, as far as going through a trial, I'm familiar with a trial and the rules of a trial and the rules of evidence.

Although not asking the exact litany of questions suggested, this failure does not necessarily preclude a constitutionally valid waiver. *Luther E. Fowler v. State*, No. 03C01-9711-CR-00509 (Tenn. Crim. App. at Knoxville, July 30, 1999). The questions identified were not specifically utilized by the trial court in making a determination on the issue of waiver of counsel, but there was, in our view, substantial compliance. The court examined the Appellant's background and education, and considered the fact that he had been studying the rules of evidence and criminal procedure for many months. The trial court made numerous references to the fact that the Appellant was charged with an A felony and faced great exposure to prison time. The court advised the Appellant that he would not be given special treatment during the trial, making it clear that he would be subject to the same standards as an attorney. The Appellant was clear and unequivocal as to the fact that he wanted to proceed *pro se* and that he was capable of representing himself. Indeed, he informed the trial court that he had already determined the best defense available in the case. Regardless, the trial court made clear that, in its view, the Appellant was unwise to continue with self-representation. We conclude that the trial adequately ascertained that the Appellant's waiver of his right to counsel was made knowingly and intelligently. This issue is without merit.

## II. Attempted Voluntary Manslaughter as a Lesser included Offense

Next, the Appellant alleges that the trial court committed reversible error by failing to instruct the jury on the lesser included offense of attempted voluntary manslaughter. The Appellant argues that the trial court is required to instruct the jury on all lesser included offenses, whether or not the Appellant requests such instructions, if the evidence is legally sufficient to support a conviction for the lesser offense. *State v. Burns*, 6 S.W.3d 453, 464 (Tenn. 1999). The trial court instructed the jury only on the charged offense of attempted first degree murder and the lesser included offense of attempted second degree murder.

First, we note that the trial in this case began on March 25, 2002. Tennessee Code Annotated Section 40-18-110(c) (2003), as amended, provides that "the Act shall govern all trials conducted on or after January 1, 2002." The provisions of this statute were not addressed at trial or on appeal. The General Assembly in 2001 amended this section to provide that an instruction as to a lesser included offense is waived unless a defendant requests in writing, prior to the trial court's charge to the jury, that such an instruction be provided to the jury. Tenn. Code Ann. § 40-18-110(c). Because the Appellant did not request an instruction on the lesser included offense of voluntary manslaughter, the Appellant has not presented a ground upon which relief may be granted. *Id.*; *see also Brian Larice Cureton*, No. M2002-00835-CCA-R3-CD (Tenn. Crim. App. at Nashville, Oct. 8, 2003).

Even if the legislature had not amended Tennessee Code Annotated section 40-18-110(c), the trial court's failure to charge the lesser included offense of voluntary manslaughter would not be reversible error as the Appellant argues. The law is settled that attempted voluntary manslaughter is a lesser included offense of attempted first-degree murder under part (b) of the *Burns* test. *State v. Dominy*, 6 S.W.3d 472, 477 (Tenn. 1999); *State v. William Binkley*, No. M2001-00404-CCA-R3-CD (Tenn. Crim. App. at Nashville, Apr. 5, 2002); *State v. Jake Christopher Reynolds*, No. M2000-00210-CCA-R3-CD (Tenn. Crim. App. at Nashville, May 23, 2001). However, because voluntary manslaughter is not a *Burns* part (a) lesser offense, it does not fall within the general rule that an instruction must be given. *State v. Walter Wilson*, No. W2001-01463-CCA-R3-CD (Tenn. Crim. App. at Jackson, Sept. 4, 2002), *perm. to appeal denied*, (Tenn. 2003).

The Tennessee Supreme Court has adopted a two-step process for determining if the evidence justifies a jury instruction on a lesser included offense. The trial court must first determine whether there is evidence that "reasonable minds" could accept to establish the lesser included offense. *Burns*, 6 S.W.3d at 649. In making this determination, the court must view the evidence liberally in a light most favorable to the existence of the lesser included offense without judging its credibility. *Id.; see also State v. Ely*, 48 S.W.3d 710, 722 (Tenn. 2001). Next, the court must determine if the evidence, viewed in this light, is "legally sufficient" to support a conviction for the lesser included offense. *Burns*, 6 S.W.3d at 469. "The guiding principle is that if there is evidence in the record from which the jury could conclude that a lesser included offense was committed, there must be an instruction for the lesser offense." *State v. Ben Mills*, W1999-01175-CCA-R3-CD (Tenn. Crim. App. at Jackson, May 3, 2002). It is the evidence, not the theories of the parties, that determines whether an instruction on a lesser included offense should be given. *State v. Allen*, 69 S.W.3d 181, 188 (Tenn. 2002). Furthermore, the decision to convict on a lesser included offense should not be taken from the jury simply because the element distinguishing the greater offense from the lesser offense is "uncontroverted." *Id*. at 189. If the evidence justifies an instruction, the failure to charge the offense is error even though the evidence was also sufficient to support the greater offense. *Burns*, 6 S.W.3d at 471.

Under Tennessee law, "voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a) (1997). The Appellant argues that the victim's testimony of the events prior to the shooting support a finding of the required "state of passion." The victim testified at trial that he angrily approached the Appellant and confronted him about his reckless driving through the neighborhood. Although the victim testified that his purpose in approaching the Appellant was to discuss his concerns about the safety of children in the street, the Appellant began talking "crazy" as the victim approached the vehicle. Specifically, the Appellant stated, "What you doing knocking on my car window man, what's the problem, what's up with you, what you trying to do." The victim further testified that the Appellant appeared to think that the victim and his friends were trying to rob him because he attempted to hand the victim his jewelry. Although the two men shook hands and the victim assumed their differences were resolved, the Appellant backed his car onto the street and accelerated towards the victim. We find that the evidence, viewed in the light most favorable to the existence of the lesser included offense of

attempted voluntary manslaughter, raised an issue that the Appellant was acting under a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner. Accordingly, based upon these facts, the instruction should have been given.

Nevertheless, while the trial court's failure to instruct the jury on voluntary manslaughter was error, we conclude that this error was harmless beyond a reasonable doubt because of the jury's rejection of the lesser included offense of attempted second degree murder. There is general agreement that the constitutional error in failing to instruct may be declared harmless when the jury, by finding a defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser included offenses. *State v. Allen*, 69 S.W.3d 181, 190-91 (Tenn. 2002); *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998), *modified by State v. Ely*, 48 S.W.3d 710 (Tenn. 2001). Thus, this issue is without merit.

## III. Sufficiency of the Evidence

The Appellant also challenges the jury's verdict finding him guilty of attempted first degree murder and being a felon in possession of a firearm. When an appellant challenges the sufficiency of the evidence, this court must determine "whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

The credibility of witnesses, the weight of their testimony, and the reconciliation of conflicts in the evidence, are matters entrusted exclusively to the trier of fact. *State v. Gentry*, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). A jury verdict for the State accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, a guilty verdict removes the presumption of innocence enjoyed by defendants at trial and replaces it with a presumption of guilt. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Thus, an appellant challenging the sufficiency of the evidence carries the burden of illustrating to this court why the evidence is insufficient to support the verdict. *State v. Freeman*, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996).

On appeal, the Appellant specifically argues that, though some evidence supports his convictions, it is insufficient under *Jackson v. Virginia* to justify a rational trier of fact to find him guilty of the offenses beyond a reasonable doubt. *Jackson v. Virginia* addresses two important aspects of a sufficiency review: (1) the manner of review of the convicting evidence and (2) the standard of review for legal sufficiency. The scope of our examination of the evidence is not equivalent to that of the jury. In a challenge to the sufficiency of the evidence, this court does not retry the Appellant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or non-credible proof, as these issues are resolved solely by the jury. Rather, we look to the record to determine, in the light most favorable to the State, whether

there was substantive probative evidence to support the verdict. The second inquiry, the question of legal sufficiency, then follows: whether the record contains evidence from which the jury could have found the essential elements of the crime beyond a reasonable doubt. Every reasonable hypothesis of innocence need not be dispelled; it is only necessary that there exists proof which supports the elements of the crime.

The Appellant was convicted of attempted first degree murder. Applicable to this case, criminal attempt is committed when a person,

> acting with the kind of culpability otherwise required for the offense: . . . (2) [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part[.] . . .

Tenn. Code Ann. § 39-12-101(a) (1997). First degree murder is defined as "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 2002).

The Appellant argues that the only evidence supporting his convictions are identifications, made over one year after the shooting, by the victim and his "close friend," and that no physical evidence tied the Appellant to the crime. He argues this is insufficient under the standard. We disagree. The victim and Tony Fowler both made positive identifications of the Appellant. Proof established that the Appellant's mother owned a burgundy Chevrolet sedan, which the Appellant often drove. Several witnesses identified the car driven by the Appellant as being at the scene of the crime. The proof further established that Tara, the female whom the victim identified as the person in the car driven by the Appellant, was the Appellant's girlfriend.

The Appellant was also convicted under Tennessee Code Annotated § 39-17-1307 (1997) of being a felon in possession of a firearm. The offense is defined as "carr[ying] with the intent to go armed a firearm, . . . [and having] been convicted of a felony involving the use or attempted use of force, violence or a deadly weapon." Tenn. Code Ann. § 39-17-1307(a)(1), (b)(1)(A). The evidence before the jury was sufficient to establish this offense. The State introduced a prior judgment of conviction establishing that, in 1994, the Appellant was convicted of aggravated assault. Having accepted the testimony that the Appellant was armed with a firearm and that he shot the victim four times, it was clear that the Appellant was in possession of a firearm. Taken in the light most favorable to the State, the evidence was more than sufficient for a rational trier of fact to have found the Appellant guilty, beyond a reasonable doubt, of the crimes for which he was convicted.

## CONCLUSION

Based upon the foregoing, we conclude that the Appellant did knowingly and intelligently waive his right to counsel and the evidence is legally sufficient to support his convictions for attempted first degree murder and being a felon in possession of a firearm. Although we conclude that the failure to charge the jury upon the lesser included offense of attempted voluntary

manslaughter was error, such error was harmless beyond a reasonable doubt.  Accordingly, the judgment of the trial court is affirmed.

 

 

_____
DAVID G. HAYES, JUDGE